Marshall, Ch. J.,
 

 delivered the opinion of the court, as follows : — This is an appeal from a decree of the Circuit Court for the district of Columbia, whereby a bill brought by the plaintiffs for the specific performance of a contract, was dismissed. The material facts are these :
 

 Daniel Carroll, the defendant, was, previous to the establishment of the city of Washington, proprietor of a large tract of land, part of which lies within its present limits. This part was conveyed to trustees, one moiety for the use of the public, and the other moiety for the use of the said Carroll.
 

 After the place for the seat of government had been selected, and the boundaries of the city marked out, the legislature of Maryland authorized the appointment of commissioners to superintend the affairs thereof,'and among- other powers, authorized them to divide the lots in the said city between the public and the original proprietors, and declared, that such divisions, made in a specified form, and certified by them, should revest in the original proprietors the legal estate whereof they were formerly seised in the lots and squares assigned to them respectively. The commissioners were also authorized to sell the lots retained for the public use, and on receiving the purchase-money, to convey to the purchasers. On the 23d of September 1793, James Greenleaf purchased from the commissioners 3000 lots lying in that part of the city which had been conveyed by Carroll; and on the 24th of December 1793, James Greenleaf and Robert Morris made from the commissioners an additional purchase of 3000 lots. Neither the purchase-money being then paid, nor a division made, the legal title remained in the trustees, and was a security for the purchase-money. These contracts, if executed by conveyances, would *have vested in Green-
 
 v-va^o
 
 leaf and Morris all the public lots which were intermingled with those hereinafter stated to have been purchased by Greenleaf from Carroll.
 

 On the 26th day of September, in the year 1793, the said Daniel Carroll and James Greenleaf entered into articles, whereby Daniel Carroll covenanted, in consideration of
 
 51.
 
 and of the covenants therein-after mentioned, to convey to the said Greenleaf, twenty lots of ground in the city of Washington, fronting on South Capitol street, in all convenient speed after the lots in that part of the said street should be divided between the said Carroll and the commissioners of the public buildings. The said conveyances to be on condition, to be void, in case the said Greenleaf should not, within three years from that date, erect a good brick house on each lot, at least 25 feet front, 40 feet deep, and two stories high. And the said Carroll further
 
 *299
 
 covenanted, that after the division, to be made of the land lying between the forks of the canal, between him and the commissioners, should be completed, he would sell to the said Greenleaf every other lot belonging, after such division, to the said Carroll, for the consideration afterwards mentioned in the said articles ; and would lay out the whole amount of the purchase-money, when received, in building houses as near as well might be, to those erected and erecting by the said Greenleaf; and in case of selling any of his property, he would cause buildings, to the amount of the purchase-money, to be erected thereon. The said Greenleaf agreed to erect, on each of the first-mentioned twenty lots, one good brick house, at least 25 feet front, 40 feet deep, and two stories high, within three years from the date, and to reconvey any of the said 20 lots, not built upon within the time, and pay 100Í. for each of the said lots, not so built upon ; to pay 30i. for each of the other lots to be purchased ; to lay out on the last-mentioned lots the sum of 3000Í. within two years, and the further sum of 3000Í. within four years ; to pay one-half of the amount of the purchase-money, with interest, within two years, and the remainder, with interest, within four years. Carroll to make deeds for the last-mentioned lots purchased, as the money should be paid. The parties bound themselves each to the other in the penal sum of 20,000i.
 

 *On the 8th June 1705, it was agreed between the same parties, to change the contract so far as that the said Greenleaf should build twenty brick houses of such description as he should judge proper, provided they are two stories high, and cover an equal extent of ground with the houses before mentioned, and of which the one moiety, or ten houses, should be built on the south part of square numbered ,651, and the residue on the east side of said square.
 

 In July 1794, a partial division was made between Carroll and Green-leaf, by which the square No. 651 was allotted to the latter. It was on this square that the twenty houses mentioned in the contracts between the parties were intended to be built.
 

 On the 13th of May 1796, James Greenleaf, in pursuance of articles made July 10th, 1795, assigned his contract with Carroll to Morris and Nicholson, to whom he also transferred his interest in a large portion of the lots purchased from the commissioners. In the summer of 1796, Morris and Nicholson came to the city of Washington, when a division of the lots was completed, which was reported to the commissioners, on the 14th of September, by whom it was then ratified. Twenty brick houses were erected on the square 651, and covered in by the 26th September 1796, the time specified in the contract. Some of them were completed. In May 1797, Daniel Carroll entered into the square 651, and took possession of the buildings thereon, which he has held ever since, and has permitted them to be greatly injured.
 

 Morris and Nicholson conveyed their property in the city, to the plaintiffs, in trust for certain creditors, by deed bearing date the 26th day of June 1797, and became bankrupts. This bill was filed in December 1804, claiming a specific performance of the whole contract of September 1793, or, if the court should be of opinion, that the contract ought to be divided, the plaintiffs prayed for a specific performance of that part of it which respects the twenty lots, on which they said houses had been erected in con
 
 *300
 
 formity with their agreement. They contended, that the non-execution on their part of so much of the contract of September 1793, as remained to be *performed, was not to be ascribed to any fault of theirs, but to the r*, . failure of Carroll to convey the lots he had stipulated to convey. *-
 

 On the part of the defendant, it is contended, that he could not convey, until a division should be made and sanctioned by the commissioners, and that it was as much the duty of Greenleaf, as of himself, to attend to the division. That his great motive for entering into the contract was, by improving that part of the city in which his property lay, to increase its value and to give the town that direction. That this, from the failure of the other contracting party to perform his covenants, had become impossible : that the consideration on which he was to convey, could not now be received ; and that it would, therefore, be iniquitous to compel a conveyance.
 

 This court is clearly of opinion, that by the contract of September 1793, Daniel Carroll was bound to convey to Greenleaf the property therein mentioned, without waiting for the execution of the contract on the part of Greenleaf. Being so bound, he ought to have taken those steps which were within his power, and which were necessary to be taken, in order to enable him to perform his engagements. He ought, therefore, to have obtained from the commissioners that act which would revest in himself the property to be conveyed.
 

 It is true, that Greenleaf, having purchased the public lots, must have concurred in the division, and, had he declined coming to one, his default would have excused Carroll. But it is not pretended, that he ever declined a division. It is true, that his omitting to press one, is a proof that, for some time at least, he was not anxious on the subject; and this diminishes the blame which might otherwise attach to Carroll for his inattention to so material a circumstance.
 

 But in July 1794, a division between Carroll and Greenleaf of several squares was made, and the square on which the twenty houses were to be erected was, among others, assigned-to Greenleaf. There is no excuse for the delay of Carroll in enabling himself to convoy the lots assigned to Green-leaf in this division. He *alleges, that, as the calculations of their contents were inaccurate, the confirmation of this division by the L eommissioners was necessarily deferred, until this matter should be adjusted. But the court cannot admit the sufficiency of this apology. Any inaccuracy in the calculations would be adjusted by allowances in the divisions after-wards to be made of the remaining lots.
 

 It appears, that in February 1796, Robert Morris offered the first payment stipulated in the contract of September 1793, with the interest which had accrued thereon, and demanded deeds for the twenty lots. In this letter, Morris consents that these deeds should be executed as an escrow, to be delivered, on their fulfilling that part of the contract, by building twenty houses on the said lots, and proposes that separate deeds should be executed, that so many might be delivered as Morris and Nicholson should entitle themselves to. He also demanded a conveyance of so many lots, as the money offered would pay for, and required that Carroll should perform that part of his contract, which required him to lay out half the money received in improving adjacent lots. This is the substance of Morris’s ietter, dated 22d February 1796, directed to Mr. Cranch, the agent of Morris, which
 
 *301
 
 appears by Carroll’s letter, written on the 29th of the same month, to have been laid before him, although Mr. Cranch does not recollect the fact. The conveyances, however, were not made nor the money paid.
 

 Although the covenant to convey is not a condition precedent on the performance of which the covenant to build depends, yet both from the words of the contract and the nature of the transaction, it was apparently the expectation of the parties, that the conveyance would precede the building. Nor was the conveyance an immaterial circumstance. In any state of things, it was an important part of the contract, and in the events which have actually occurred, it was so important, as to render it probable that the failure of Carroll in this respect, has prevented the completion of the twenty buildings. Under this view of the case, had the bill demanding a specific performan'ce, been brought immediately after the entry of Mr. Carroll, in May 1797, the claim of the plaintiffs would certainly have been entitled *47fil i:<i0 sei'i°us attention, and might perhaps have prevailed. It was not J then too late, by executing the contract, to have effected its great object. But the state of things is noAV entirely altered. The effort to give the city that direction would now, according to every reasonable calculation, be unavailing. Time, therefore, in this contract was essential; and although, in consequence of the failure of Carroll to convey, the court might have relieved against a forfeiture, so long as an execution of the contract could place the parties essentially in the situation in which they would have stood had exact punctuality been observed ; yet equity cannot relieve, where it is impossible to place the parties in the same situation, and Avhen real fault is imputable to the person praying the aid of the court. So far then as Morris and Nicholson have failed to execute the contract of September 1793, the plaintiffs are too late to be entitled to the aid of this court.
 

 But it is contended, that Morris and Nicholson have fully complied with that part of the contract which respected building twenty houses, and are, therefore, entitled to a conveyance of the twenty lots. The description of the houses to be built is so indefinite as to be satisfied, it is said, by running up the brick walls, and putting on the roofs. The court is not of that opinion. On fair construction, the contract requires that the houses should be fit for the habitation of families. No particular degree or kind of finishing is prescribed ; but a building cannot be fairly denominated
 
 “
 
 a good brick house,” until it be rendered a comfortable dwelling, fit for the reception of a tenant. This was certainly contemplated by the parties, and a different construction would tolerate an unfair and fraudulent execution of the agreement.
 

 But although the twenty houses were not all completed, some of them were, and on examining the contract, it appears, that Greenleaf and his .assigns were entitled to a lot for each house they should build. The contract, with respect to the twenty lots, Avas not entire. It was not necessary to» perform the whole contract, or to forfeit the whole property ; that which was, as well as that which was not improved. This will be clearly perceived on a reference to the contract itself.
 

 *Oarroll covenants to convey lots, with condition to be void, if Greenleaf shall not, within three years, erect a good brick house, of stipulated dimensions, on each lot. Greenleaf agrees to erect the houses, and covenants to reconvey any lot not built upon within the time, and to pay 100?. for each lot not so built upon. This stipulation obviously severs
 
 *302
 
 the contract with respect to each lot. Only those not built upon were to be reconveyed, and for each lot reconveyed there was a forfeiture of 1001
 

 So far as the contract has been executed by Greenleaf, or his assigns, he and they ought to be placed in the same situation as if it had been executed hy Carroll also. Had it been executed by him, the title of Morris and Nicholson to as many lots as they had erected houses of the description agreed upon, would have been absolute. It could not have been defeated, by their failure to perform the residue of the contract. Carroll ought not to enable himself to defeat it, by having broken his contract.
 

 The plaintiffs then ought to have a conveyance of so many lots as shall be equal to the number of houses they have completed, under the agreement of September 1793, and as Can-oil’s entry in May 1797, was so far tortious, he ought to be accountable for the injury sustained by the property, and for rents and profits from that time. But as the same contract binds Greenleaf and his assigns to pay 100Í. for each lot not improved, and as the court does not consider this as a mere penalty, but as damages assessed by the parties themselves, the plaintiffs will not be entitled to a conveyance of the lots which were improved, without paying 100?. with interest from the 6th of May 1797, the time when the contract was determined by the entry of Carroll, on each unimproved lot. It is at their election, to obtain a specific performance on these terms, or to abandon their claim.
 

 It is the opinion of this court, that the decree of the circuit court ought to be reversed and annulled, and the cause remanded with directions to take an account of rents and profits which have been or might have been received by the defendant on the houses which have*been completed by Morris and Nicholson on the twenty lots in the proceedings mentioned ; *- and also to take an account of the money, with interest thereon, which was demandable by the defendant on each unimproved lot ; and that an issue, to be tried either in Alexandria or Washington, be directed to ascertain what damages have been sustained by the houses built by Morris and Nicholson, previous to the 6th of May 1797, whether finished or unfinished, on those lots which shall be decreed to be conveyed to the plaintiffs, since the entry then made by the defendant; and that on receiving the balance, if any, which may remain due to the said Carroll, after deducting the rents and profits before mentioned, and the damages aforesaid, he be directed to convey to the plaintiffs a number of standard lots, which shall be equal to the number of houses completed by the said Morris and Nicholson, in pursuance of the contract of September 1793 ; the said lots to be those on which the houses stand, which may have been completed, and if there be more than one house standing on the same standard lot, so that it may be necessary to convey lots, not fully improved, in order to make the quantity of ground equal to the superficial contents of the standard lots to be conveyed, then such standard lots are to be laid off by direction of the circuit court, in such manner as may be equitable and convenient; provided, that the ground improved or built upon by Morris and Nicholson under the said contract, and re-entered upon by the defendant, in May 1797, be appropriated in the first instance so far as the same shall suffice or be necessary to make up the quantity of ground to be conveyed to the plaintiffs, but so appropriated that no lot shall be divided, unless it be necessary to convey part of a lot, in order to make up the full quantity of six standard lots.