[L. A. No. 406.  In Bank.—November 10, 1899.]

O. B. STANTON, Appellant, v. JOHN SINGLETON and FREDERICK M. MOOERS, Respondents.

SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY.—A contract cannot be specifically enforced if it has not been performed by the plaintiff, and does not allow of a mutuality of the remedy of specific performance, and is not in its nature a contract which a court of equity would undertake to enforce against the plaintiff. [Per McFarland, J., Temple, J., and Henshaw, J.]

ID.—VAGUE AND UNCERTAIN CONTRACT.—A vague and uncertain contract will not be specifically enforced, even though it may not be void for uncertainty, and might sustain an action for damages for its breach. [Per McFarland, J., Temple, J., and Henshaw, J.]

ID.—PERFORMANCE INVOLVING POSSESSION, LABOR, AND SKILL.—An unperformed contract on the part of the plaintiff, the specific performance of which requires that he be let into possession, under the contract, for the purpose of performing labor provided for therein, and for the erection of a quartz-mill and the opening and developing of a quartz mine therein provided for, the complete performance of which, under the direction of the court, would require constant and continuous supervision, with the exercise of special knowledge. skill, or judgment, in the oversight thereof, will not be specifically enforced. [Per McFarland, J., Temple, J., and Henshaw, J.]

ID.—NONEXECUTION OF CONTRACT BY COTENANT.—Where the contract named a cotenant of the defendants as a party of the first part, and was unexecuted by him or on his behalf, his right of possession cannot be disturbed by placing the plaintiff in possession to allow the completion of performance on his part. [Per McFarland, J., Temple, J., and Henshaw, J.]

ID.—FAILURE TO OFFER DUE PERFORMANCE.—Where the plaintiff never offered to perform the contract according to its true construction, and subject to its stipulated conditions, the remedy of specific performance cannot be said to have become mutual. [Per Beatty, C. J.]

CXXVI. CAL.—42

ID.—OFFER UPON IMPROPER CONDITION—CONTRACT NOT EXECUTED BY CO-
TENANT.—An offer of performance made by the plaintiff. conditioned
upon a conveyance of an interest which, by the terms of the
contract, was to be made by three tenants in common, named as
parties of the first part, one of whom never executed the con-
tract, and which interest the two parties signing the contract
did not agree to   convey, is an insufficient offer.  · [Per Beatty,
C. J.]

APPEAL from a judgment of the Superior Court of Kern
County.   Walter Van Dyke, Judge.

The facts are stated in the opinion of Justice McFarland.

W. S. Wood, Lloyd & Wood, J. W. Ahern, and J. A. Haral-
son, for Appellant.

The fact that contracts require the expenditure of labor and
skill is not an absolute objection to a specific performance.
(*Sanderson v. C. & W. Ry. Co.,* 11 Beav. 497; *Storer v. Great
Western Ry. Co.,* 2 Younge & C. 48; *Wilson v. Furness Ry. Co.,*
L. R. 9 Eq. Cas. 28; *Ross v. Union Pac. Ry. Co.,* 1 Woolw. 26;
*Schmidt v. Louisville etc. Ry. Co.* (Ky., June 15, 1897), 41 S. W.
Rep. 1015; *Prospect Park etc. Ry. Co. v. Coney Island etc. Ry.
Co.,* 144 N. Y. 152; *Lawrence v. Saratoga Lake Ry. Co.,* 36 Hun,
467; *Central Trust Co. v. Wabash etc. Ry. Co.,* 29 Fed. Rep. 546;
*Joy v. St. Louis,* 138 U. S. 1, 47, 50; *Union Pac. Ry. Co. v. Chi-
cago etc. Ry. Co.,* 163 U. S. 564.)   There is no criterion of cer-
tainty, and contracts will be enforced, which are to some ex-
tent vague, if they are reasonably certain in the main par-
ticulars under the circumstances of the case.   (Pomeroy on
Contracts, secs. 90, 459; *Mead v. Parker,* 115 Mass. 413; 15 Am.
Rep. 110; *Ives v. Hazard,* 4 R. I. 15; 67 Am. Dec. 500; *Moss v.
Atkinson,* 44 Cal. 3; *Central Trust Co. v. Wabash etc. Ry. Co.,
supra; Joy v. St. Louis, supra.*)   A mine may be worked by or
under one or more tenants in common.   (*McCord v. Oakland
etc. Co.,* 64 Cal. 134.)   An agreement will be enforced against
a tenant in common who signs an agreement, though a cotenant
named is not bound by the contract.   (*Keator v. Brown* (N. J.,
Jan. 18, 1899), 42 Atl. Rep. 278, and cases cited; *Cachran v.
Blout,* 161 U. S. 350.)

Reddy, Campbell & Metson, W. A. Harris, and J. S. Chapman, for Respondents.

The contract, not having been executed by one of the parties named therein, is not binding upon the defendants who signed it. (*Barber v. Burroughs*, 51 Cal. 404; *Jackson v. Torrence*, 83 Cal. 538; Bishop on Contracts, enlarged ed., sec. 348; *Olson v. Lovell*, 91 Cal. 506.) The contract is not one of which equity will decree a specific performance. There is no mutuality of remedy, as the contract could not be enforced against the plaintiff. (Civ. Code, sec. 3386; Pomeroy on Contracts, sec. 164; *Cooper v. Pena*, 21 Cal. 411; *Anson v. Townsend*, 73 Cal. 418; *King v. Gildersleeve*, 79 Cal. 504, 509; *Wakeham v. Barker*, 82 Cal. 46; *Smith v. Taylor*, 82 Cal. 533; *Lattin v. Hazard*, 91 Cal. 87; *Banbury v. Arnold*, 91 Cal. 606; *Crummer v. Carlton*, 93 Cal. 189; 27 Am. St. Rep. 171; *Mathews v. Davis*, 102 Cal. 207.) The court will not undertake by a continuous order to supervise the performance of an unperformed contract on the part of the plaintiff, requiring labor and skill, and the exercise of personal judgment. (Pomeroy on Contracts, sec. 164; *Lattin v. Hazard, supra; Clarno v. Grayson*, 30 Or. 111; *Texas etc. Ry. Co. v. Marshall*, 136 U. S. 393-407, and cases cited; *Ballou v. March*, 133 Pa. St. 64; *Winter v. Goebner*, 2 Colo. App. 259; *Electric etc. Co. v. Mobile etc. Ry. Co.*, 109 Ala. 190; 55 Am. St. Rep. 927.) Burcham, who is a cotenant with the defendants, and is not bound by the contract, has the right of possession of the whole property, as against the plaintiff. (*Lytle Creek Water Co. v. Perdew*, 65 Cal. 447.) The contract is too vague and uncertain in its terms to be specifically enforced. (Civ. Code, sec. 3390, subd. 6; Pomeroy on Contracts, 145; *Agard v. Valencia*, 39 Cal. 292, 301; *Magee v. McManus*, 70 Cal. 553, 557; *Smith v. Taylor*, 82 Cal. 533, 541; *Ballou v. March, supra; Louisville etc. Ry. Co. v. Bodenschatz etc. Stone Co.*, 141 Ind. 251; *Thompson v. Weeks*, 32 Ill. App. 642.)

McFARLAND, J.—The court below sustained a demurrer to the complaint and gave judgment for defendants, and plaintiff appeals from the judgment.

The action is brought to compel the specific performance by the two defendants named of a certain alleged contract, a copy

of which is annexed to the complaint, marked "Exhibit A." and made a part thereof. The contract is as follows:

"Agreement made and entered into this 22d day of June, 1895, between John Singleton, F. M. Mooers, and C. A. Burcham, of Kern county, state of California, parties of the first part, and O. B. Stanton, of Bakersfield, state of California, party of the second part. Whereas, the parties of the first part are owners by location of a certain mineral tract located in the Summit mining district, Kern county, California, and designated and described as follows: [Here follows a description of the property, which consists of thirteen different quartz and placer claims.] And, being desirous of obtaining capital to work the same, hereby agree with party of second part that for and in consideration of one dollar in hand to them paid, the receipt of which is hereby acknowledged, agree to give party of second part thirty days' option of a one-half interest of the above-enumerated claims now owned by them, in consideration of the party of the second part agreeing to spend, first, ten thousand dollars ($10,000.00) in opening and developing said property; second, in erecting a ten-stamp quartz-mill, modern in every particular, the stamps to weigh not less than seven hundred pounds, or the equivalent, as may be found the most desirous to work the ores. The parties of the first part hereby agree that this contract having been entered into in good faith, any locations that they may make or cause to be made in the said district shall be made for the joint benefit of both parties. The party of the second part shall have the privilege to incorporate as many companies as he may deem fit, provided, always, that any money, stock, or other consideration that he may obtain as profit shall be divided equally between the parties hereto. The parties of the first part hereby agree that the party of the second part shall have the privilege any time within six months from the date of this instrument to purchase the aforesaid property for the sum of five hundred thousand dollars ($500,000.00). The essence of this contract being time, it is mutually agreed that should the party of the second part not commence active operations within thirty days, this contract shall be null and void. The party of the second part hereby agrees that all stock delivered to parties of the first part

shall be free and nonassessable, and further, if he should fail to fully carry out this contract, that all moneys paid or expended by him shall be forfeited and the full properties returned to the parties of the first part.

> "(Signed)  JOHN SINGLETON,
> "Party of the first part.
> "FREDERICK M. MOOERS,
> "Party of the first part.
> "O. B. STANTON,
> "Party of the second part."

It will be observed that this contract, although purporting to be signed by the two respondents and C. A. Burcham, was not signed by the latter; and at the hearing in Department, while other points were briefly noticed by counsel for respondents, the stress of their argument was on the point that the contract was void because not signed by Burcham, and, in the opinion of the court then rendered, that point was alone considered. But at the hearing in Bank, while that point was also urged, it was elaborately argued by counsel for respondents that, even if it be held that the contract was sufficiently executed without the signature of Burcham, still it was in its nature a contract which a court of equity will not decree to be specifically performed; and we think that this contention must be sustained.

The action is based upon the contract, which was made a part of the complaint; and of course the meaning which appears on its face cannot be changed by any mere matter of averment in the pleading. There is one provision in the contract to the effect that the party of the second part shall have the privilege within six months "to purchase the aforesaid property" for five hundred thousand dollars; but whether the "aforesaid property" means the whole of the mining property described or only an undivided half thereof, we do not understand that this clause of the contract is particularly involved in this action. The contract gives to the appellant "thirty days' option of a one-half interest of the above-enumerated claims," upon the consideration, first, that he shall spend ten thousand dollars in opening and developing the property, and, second, shall erect a ten-stamp quartz-mill, "modern in every particular, the stamps

to weigh not less than seven hundred pounds, or the equivalent, as may be found the most desirous to work the ores." If this means anything, it means that he should have thirty days in which to determine whether he would spend the ten thousand dollars and erect a mill, and thereby become entitled to an undivided one-half of the property. It is averred in the complaint that appellant notified the respondents within the thirty days that he elected to perform his part of the contract, "and to thereby acquire the undivided one-half interest"; that he then and there proceeded to expend, and did expend, two thousand dollars in pursuance of the contract, and that afterward, on or about the ninth day of July, A. D. 1895, the defendants informed him that they would not be bound by the contract and repudiated it, and have ever since refused, and do now refuse, to be bound by the terms thereof, or to permit plaintiff to continue the performance of labor on the property, or to expend the remainder of the ten thousand dollars, or to erect a mill, and refuse to allow the appellant to enter upon the claims or to do work thereon, and have refused to execute to him a deed to the one-half interest. The prayer of the complaint is, that the respondent be let into possession of the premises for the purpose of performing the work under the contract, and for the purpose of erecting the mill, and of otherwise performing and carrying out the covenants of the contract, and that defendants be restrained from interfering with the work of plaintiff, "and that upon the completion of said labor and the expenditure of said money and the erection of said ten-stamp quartz-mill, that plaintiff be decreed to be the owner of one-half interest in and to the premises set forth in said complaint," and that defendants execute a conveyance to him of an undivided one-half interest, et cetera. Nothing is said about the tender under the five hundred thousand dollar clause, nor is any relief asked under it; so that the only asserted right to a decree of specific performance is that based on the ten thousand dollar and quartz-mill clause.

Of course, there is, on the face of the instrument, no mutuality of contract, for appellant does not promise in it to do anything. It is contended, however, that afterward his notice to respondents of his election to proceed under the con-

tract made it mutual, under the principle announced in *Say-ward v. Houghton,* 119 Cal. 545, and some other cases cited; but with our views of the case it is not necessary to discuss the applicability of that principle here. Neither is it necessary to consider the point (which is certainly not without merit) that the contract itself is void for all purposes on account of its ambiguity and uncertainty. In our opinion the contract is one which does not allow a mutuality of the remedy of a decree of specific performance, and is not, in its nature, a contract which a court of equity would undertake to enforce specifically at the suit of respondents; and it is settled law that a contract will not be specifically enforced unless its character be such that either party to it could have it specifically enforced as against the other. (*Cooper v. Pena,* 21 Cal. 404, and cases there cited; *Wakeham v. Baker,* 82 Cal. 46; *Anson v. Townsend,* 73 Cal. 418; *King v. Gildersleeve,* 79 Cal. 504; *Banbury v. Arnold,* 91 Cal. 608; Pomeroy on Contracts, 2d ed., sec. 162.) In *Cooper v. Pena, supra,* the court states the principle in this language: "The remedy must be mutual as well as the obligation, and where the contract is of such a nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other." Therefore, waiving all other questions, if the obligations of appellant as a party to the contract (assuming that he incurred any) are not such as would be specifically enforced by a court of equity at the suit of respondents, then, under the principle and authorities above stated and referred to, this action cannot be maintained. And it is quite clear that his obligations were of that character.

Appellant contends that *Cooper v. Pena, supra,* which is a leading case on the general subject and has been frequently cited, should not be taken as authority here because the obligation of plaintiff there was for expressly designated personal services. But *Cooper v. Pena, supra,* is cited mainly to the point that there must be "a mutuality of remedy." And if there be not such mutuality—no matter from what cause—the principle declared in that case applies. Moreover, it is difficult to see any difference in kind between the obligation of the appellant here and that which was held not specifically enforceable in *Cooper v. Pena, supra,* for "opening and developing" a mine,

and "erecting" such a quartz-mill as is described in the contract, certainly involved to some degree personal skilled services, knowledge, judgment, and skill, and a repose of confidence.

But, apart from the foregoing consideration, the remedy of specific performance would not lie against appellant in the case at bar for want of certainty and exactness in the contract. A contract expressed in very general terms might not be void for uncertainty and might be the basis of an action for damages for its breach, while it would be entirely too loose and inexact to warrant a decree for specific performance. In Pomeroy on Contracts, section 159, it is said: "A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon mere nonperformance by a defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced." Now, in the case at bar the property to which the contract relates consists of a large number of mining claims of different kinds, quartz and placer; and a provision for "opening and developing said property" is certainly too general and indefinite to be specifically enforced by an equity decree. Moreover, the provision for "erecting a ten-stamp quartz-mill," et cetera, does not provide where it is to be erected—not even that it shall be on "said property"; but assuming its meaning to be that the mill shall be on some part of one of the large number of mining claims described in the contract, still, with that meaning, it is widely uncertain and indefinite as to the place where it was to be erected; and the place of the location of the mill would probably be a matter of very great importance. Again, there is no provision as to the limit within which the ten thousand dollars should be expended in developing the mine, or within which the mill should be erected; the only pro-

vision touching that subject is that the appellant should "com-
mence active operations"—whatever that may mean—within
thirty days.    In all these respects the contract is too loose and
vague to justify a decree of specific performance.

Moreover, a court will not undertake to frame a decree of
specific performance where it involves a continuous and long
series of acts of supervision requiring special knowledge and
skill, and repeated examinations and new directions.   In Pome-
roy on Contracts, section 312, the author states the law on
this point—and he cites a multitude of authorities to sustain
the text—as follows: "Finally, contracts which by their terms
stipulate for a succession of acts, whose performance cannot be
consummated by one transaction, but will be continuous and
require protracted supervision and direction, with the exercise
of special knowledge, skill, or judgment in such oversight—such
as agreements to repair or to build, to construct works, to build
or carry on railways, mines, quarries, and other analogous un-
dertakings—are not as a general rule specifically enforced."
The rule is aptly stated, and authorities cited, in *Clarno v.
Grayson*, 30 Or. 144, which in its leading features is much like
the case at bar.    In that case the plaintiff claimed under an
option to purchase a mine, with the right to work it until a
certain time and then buy it at a certain price.   He was ousted
by the other party before the expiration of the time.   He
brought an action to be restored by a decree of specific per-
formance to possession, and to be allowed to continue the work
—claiming, also, that certain intermediate proceeds of the mine
should be accounted for and applied on the purchase price,
which raises questions not pertinent here.    With respect to the
point now under consideration the court said: "One element
of the prayer of plaintiff is, that he be put in possession and
maintained there, and that a future time be fixed in which
plaintiff shall state any balance then due on an accounting after
possession given, and this proposition was urged both in the
briefs and at the argument.    We think it untenable for two
reasons: 1.  The act required of the court comprehends an order
continuous in its nature, requiring protracted supervision and
direction, with the exercise of special knowledge, skill, or judg-
ment in the oversight, to determine whether the mine is being

operated under the conditions of the contract, and will not be specifically enforced. (Pomeroy's Specific Performance of Contracts, par. 312; *Marble Co. v. Ripley*, 10 Wall. 358; *Beck v. Allison*, 58 N. Y. 367; 15 Am. Rep. 430; *Mastin v. Halley*, 61 Mo. 196.)" In *Mastin v. Halley, supra,* the court refused to specifically enforce a contract to convey, because the consideration of the contract was the plaintiff's undertaking to erect a certain building on the land, which could not have been specifically enforced against the plaintiff—the court saying: "A court of equity will not enforce building contracts." In *Lattin v. Hazard*, 91 Cal. 87, this court held that the remedy of specific performance did not lie in favor of plaintiff because it could not have been invoked in favor of defendant on account of the nature of the latter's obligations; the court said: "The agreement that McLoughlin will operate the road for the stipulated period, in the mode agreed upon, is a substantial and important part of the obligation, which has not been performed, and of which specific performance cannot be enforced by a decree."

It is evident that the contract here involved is, on the part of appellant, within the principle above stated. A decree that appellant "be let into possession of said premises for the purpose of performing the labor provided for in the contract and for the erection of said ten-stamp quartz-mill, and to 'otherwise perform," et cetera, would be only the beginning of the court's work. It would have to be followed by numerous and repeated supervisions and investigations and additional decrees and orders, all requiring judgment and skill in a special business. It would have to be determined afterward what would constitute "opening and developing" the property; on what part of the numerous mines the developing should be attempted; whether the work in developing was done properly and in good faith; and whether it was done in such manner as would reasonably tend to so prospect the ground as to show whether or not it contained valuable ore, and to put it in such condition as to be worked to advantage if such ore should be discovered. The same supervision would be necessary over the building of the mill—where it should be located, whether, if erected, it would be "modern in every particular," and whether, if the stamps should be less than seven hundred pounds, it would still be

"the equivalent as may be found the most desirous to work the ore." And then within what time must the developing be done and the mill be built? All this—to say nothing of the tangled provisions about stocks of corporations, "nonassessable" —clearly brings the case within that class with respect to which courts will not undertake to frame decrees for specific performance. Moreover, Burcham is a tenant in common of the whole property; holding an undivided one-third of every part and parcel of it—seised *per my et per tout;* and, as he did not execute the contract and is not a party to the action, how can it be decreed that appellant be let into possession and allowed to use the property in the manner asked by him, when the court has no control over Burcham or his interest? This was one of the points considered in *Cooper v. Pena, supra,* for the court there say: "It is proper to remark that there is no assurance that the offer could be carried out, for there is a third person to be consulted, who might refuse to act in the matter, or might not agree to a satisfactory partition." Appellant has cited a few cases tending somewhat to the point that appellant's obligation could have been specifically performed; but they are mostly railroad cases where, in order to protect various interests of great magnitude, courts have undertaken to temporarily operate railroads through receivers, and in a few instances have ordered railroads to be completed. They are exceptional cases and do not disturb the general rule as hereinbefore stated.

Our conclusion is, that the court below properly sustained the demurrer and gave judgment for defendants; and that appellant, if he have any cause of action growing out of the contract, must be left to the remedy of a suit at law for damages.

The judgment is affirmed.

Temple, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment of affirmance, but upon grounds to a great extent distinct from those stated in the opinion of Justice McFarland.

It is conceded that a contract will not be specifically enforced unless the remedy is mutual. It is also conceded that the contract here in question does not by its terms bind the plaintiff

to do anything, and that to impart to it the element of mutuality the plaintiff must have made a binding offer to perform on his part, and this offer must have been free from any conditions which the defendants on their part were not bound to perform. (Civ. Code, sec. 1494.) It does not appear that any such offer to perform has ever been made by the plaintiff at any time, and certainly he does not make it by his complaint. He alleges, it is true, "that immediately after the execution of said contract plaintiff notified defendants that he elected to perform his part of said contract and to thereby acquire the undivided one-half interest in and to said mining claims as in said contract mentioned, and then and there proceeded to, and did thereafter, expend the sum of about two thousand dollars hereinbefore mentioned in pursuance of said contract." But this allegation is to be construed in connection with other parts of the complaint, which show that, according to plaintiff's construction of the contract, he was to become the owner of a half-interest in the mines as soon as he had expended ten thousand dollars in their development and erected a ten-stamp mill. All, therefore, that he ever offered to do at any time, so far as can be gathered from the complaint, was to expend ten thousand dollars and build a mill, upon condition that he should thereupon become the owner and have a conveyance of a one-half interest in the property. And that, indeed, is the condition upon which he offers to perform in the complaint filed herein, the prayer of which reads as follows: "That plaintiff be let into possession of the said premises for the purpose of performing the labor provided for in said contract and for the erection of said ten-stamp quartz-mill, and to otherwise perform and carry out the covenants of said contract, and that said defendants, their servants, agents, and employees, be restrained by this court from interfering with the work of plaintiff upon said mining claims, and that upon the completion of said labor and the expenditure of said money and the erection of said ten-stamp quartz-mill that plaintiff be decreed to be the owner of one-half interest in and to the premises set forth in the complaint, and that the defendants cause to be executed and delivered to plaintiff herein a good and sufficient deed conveying to said plaintiff an undivided one-half interest in and

to said premises." But the contract, which is annexed to the
complaint as an exhibit, does not bear the construction which
the plaintiff has placed upon it. The terms of this instrument
are so obscure and ambiguous that no one can assert with much
confidence that he has discovered the real and exact intention
of the parties, but I think Justice Harrison, in his opinion
delivered in Department (54 Pac. Rep. 587), correctly held
that the plaintiff, by expending ten thousand dollars and build-
ing a mill, would only have secured an option to purchase a
half interest for five hundred thousand dollars. Plaintiff,
therefore, has never offered to perform the contract according
to its true construction and subject to its stipulated conditions,
but only according to his erroneous construction and subject to
conditions which he had no right to impose, and, such being
the case, it cannot be said that the remedy of specific perform-
ance ever became mutual.

Another ground of my concurrence is, that the defendants
Singleton and Mooers never agreed to do what the court is
asked to compel them to do, and what the plaintiff makes an-
other condition of his offer to perform. They never agreed to
convey to plaintiff a half interest in the mines out of their
two-thirds. They merely executed for themselves a contract
which, if it had been completed, would have bound them in
conjunction with their cotenant, Burcham, to convey a half
interest in the whole; in other words, each of the defendants
was a part with one-sixth, and not with the one-fourth, which
the plaintiff demands. The failure of Burcham to execute the
contract left it incomplete, and the defect is not cured by the
fact that defendants represented that they had authority to
act for him. Whatever authority to act for Burcham they may
have had, or claimed, it is very certain that they neither acted,
nor pretended to act, for him in the only way they could have
done so effectively, i. e., by executing the contract in his name
and as his attorneys in fact. If plaintiff was relying upon
their asserted authority to act for Burcham, why did he not
require them to execute the contract in Burcham's behalf? If
he had done so, Burcham would have been bound, if they had
authority, and, if they did not have authority, they themselves
would have been bound to perform what they had promised in

his name. But in the incomplete condition in which the contract was delivered (assuming that the complaint shows it was delivered), neither defendants nor Burcham were bound to convey the one-sixth interest which, upon a fair construction of the written terms, was to be contributed from Burcham's third. Plaintiff nevertheless offers to perform only upon condition that he shall become the owner of that sixth interest, and that it be transferred to him by parties who never contracted to transfer it.

Rehearing denied.