MARKS v. GATES et al.

(Third Division. Fairbanks. September 4, 1905.)

No. 338.

1. PARTNERSHIP—CREATION—REQUISITES.

An agreement between two or more persons to carry on business together, and to divide the profits or losses of the joint venture, constitutes a partnership.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 15–28.]

2. MINES AND MINERALS—MINING PARTNERSHIP—CREATION—REQUISITES.

A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and

extracting the mineral therefrom, actually engage in working the same.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 222.]

3. SAME—GRUBSTAKE CONTRACT.

A grubstake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. The title accrues to each as an original locator, though the location be made in the name of one or more of the parties only. Each party to the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. Such a contract, when clearly established, will be enforced in equity.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 19, 222.]

4. SPECIFIC PERFORMANCE—CONTRACTS—SALE OF LAND.

A decree for the specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand in view of all the circumstances of the case.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 191–197.]

5. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.

Equity will not compel specific performance of a contract (1) if its terms are uncertain; (2) if it is automatic, renewing, and perpetual; or (3) if it will work a hardship or injustice upon the defendant.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 61, 153, 154.]

This is a suit in equity, seeking specific performance of the following contract:

"This agreement, made and entered into this 27th day of April, 1903, by and between William C. Gates, of Seattle, state of Washington, the party of the first part, and Isaac L. Marks, of the city and county of San Francisco, state of California, the party of the second part, witnesseth: That the said William C. Gates, for and in consideration of one dollar (1) to him in hand paid, the receipt whereof is hereby acknowledged, does hereby agree to and with the said party of the second part that he will convey to said party of

the second part a twenty (20) per cent. interest in any and all property which said Gates shall acquire, either by location, purchase, or otherwise, in the territory of Alaska." Signed by the parties and witnessed.

The second paragraph of the second amended complaint alleges additional matter as follows:

"That the one dollar ($1) consideration recited in the above agreement is a nominal consideration, and that on about the 27th day of April, 1903, the plaintiff and defendant Gates, having stated accounts between themselves, a balance of eleven thousand two hundred and twenty-five dollars ($11,225), or thereabouts, was found due to the plaintiff from the defendant Gates, to which the defendant Gates acquiesced, and in consideration thereof, and in further consideration of the sum of one thousand dollars ($1,000), which plaintiff was to pay or cause to be paid to said defendant, the defendant Gates made and executed and delivered to plaintiff the agreement hereinbefore set out, and plaintiff now avers such moneys to have been the true consideration of said agreement, of which about eleven thousand two hundred and twenty-five dollars ($11,225) were paid to the defendant Gates by the plaintiff prior to, but merged therein, and paid, settled, satisfied, and liquidated thereby, and one thousand dollars ($1,000) were also paid by plaintiff to the defendant Gates after the signing, execution, and delivery thereof, and that by means of such consideration, and under the terms and conditions of, and in pursuance to, the said agreement the defendant W. C. Gates was enabled to come to Alaska, and there to acquire, by location, purchase, and otherwise, various properties, the description of some of which is unknown to the plaintiff, and the description of the others is as follows: [And then is described seven mining claims on Cleary creek, Fairbanks mining district, Alaska]."

The fourth paragraph of this complaint alleges:

"That the value of the properties so purchased, acquired, and located by the defendant W. C. Gates is extensive, to wit, in excess of seven hundred and fifty thousand dollars ($750,000)."

The sixth paragraph alleges:

"That the defendant W. C. Gates has received large sums of money for the gold extracted from the above-described claims, and also the rents and profits thereof in excess of one hundred and seventy-five thousand dollars ($175,000)."

The eighth paragraph alleges that defendant, Gates, is heavily indebted to Barnette and to other persons unknown to plaintiff, and that he is engaged in working the claims with a large force of men. The plaintiff prays: (1) For a receiver; (2) for an injunction; (3) an accounting; (4) possession; (5) that defendants are trustees of his interest; and (6) for the specific performance of the contract.

Defendant Gates demurred to this complaint, among other grounds:

"That the complaint does not state facts sufficient to constitute a cause of action; that the contract set forth in the complaint is so unjust and inequitable as not to entitle the plaintiff to relief; that said contract is so uncertain and indefinite as not to be the subject of specific performance; and that the plaintiff has a plain, speedy, and adequate remedy at law."

Miller, West & De Journal, for plaintiff.
McGinn & Sullivan, for defendant Gates.
Condon, Hess & Brown, for defendant. Turner.

WICKERSHAM, District Judge. The complaint is yet indefinite in its statement of the consideration for the contract. Whether it is intended to allege that in consideration of the acknowledgment by the plaintiff of the payment to him of the past indebtedness of $11,225 due to him from the defendant, and the present payment to defendant by plaintiff of the sum of $1,000, the defendant made the contract sued on, is not plainly stated; but conceding that such was the intention of the pleader (and apparently no more can be claimed for the pleading), is the plaintiff entitled to the relief demanded?

This is an action to compel the specific performance of a contract and for an accounting. The sufficiency of the complaint must be measured by those rules which prevail in courts of equity. Since the basis of the action is the written contract, it will be necessary to a correct application of those rules to·

examine it, and to determine its character, what it is, and what it is not.

1. It does not create a general partnership between the parties. There is no agreement to carry on business together, in Alaska or elsewhere, and to divide the profits or losses of a joint venture. True, the complaint prays for an accounting, but it is such an accounting only as a trustee is required to make. There is nothing in the contract providing for the joint use or working of property acquired by the defendant in Alaska, and no agreement or promise on the part of the plaintiff to advance money, property, or credit to a partnership, or to do any other act or thing in aid of a common or joint interest.

2. It does not create a mining partnership. It does not mention mining property or a mining venture, other than as the word "location" used in connection with acquiring property in Alaska may be thought to do so. A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same. Skillman v. Lachman, 23 Cal. 203, 83 Am. Dec. 96; Kahn v. Smelting Co., 102 U. S. 641, 26 L. Ed. 266; Prince v. Lamb, 128 Cal. 120, 60 Pac. 689. There is no allegation that the plaintiff and defendant actually engaged in working any of the mines mentioned in the complaint, but the fair construction of the complaint is that they did not do so.

3. It is strenuously urged by counsel for plaintiff that the agreement is a grubstake contract. A grubstake contract is an agreement between two or more persons to thereafter locate mines upon the public domain by their joint aid, effort, labor, or expense, whereby each is to acquire, by virtue of the act of location, such an interest in the mine as is agreed on in the contract. The title accrues to each as an original locator, though the location be made in the name of one or more of

the parties only. Each party to the grubstake contract not named in the location notice becomes, nevertheless, an equitable owner and tenant in common with those named. Such a contract, when clearly established, will be enforced in equity. Cascaden v. Dunbar, 2 Alaska, 408, for authorities.

The complaint alleges the forgiveness of the antecedent debt due to plaintiff and the payment to Gates of the sum of $1,000, and then alleges:

"And that by means of which consideration, and under the terms and conditions of and in pursuance to the said agreement, the defendant W. C. Gates was enabled to come to Alaska, and there to acquire, by location, purchase, and otherwise, various properties."

—And then describes seven valuable placer mines as being thus acquired. This allegation, however, does not even attempt to change, add to, or modify the contract. Its only effect is to allege that with the money thus obtained from plaintiff Gates "was enabled to come to Alaska, and there to acquire" various properties. The contract and pleading combined amount to no more than this: (1) Gates agreed to convey to plaintiff a 20 per cent. interest in any and all property which he should thereafter acquire, either by location, purchase, or otherwise, in Alaska; (2) that by the forgiveness of the antecedent debt and the payment of the alleged true consideration of $1,000, Gates "was enabled to come to Alaska, and there to acquire" the properties sued for. But there is no allegation that Gates agreed to do anything in addition to those stated in his contract, and for which the $1,000 consideration was so paid to him. The contract does not provide that Gates should ever go to Alaska, or that he would use the $1,000, or any part of it, for that purpose, or for the purpose of acquiring mines or other property there, or even that he would acquire property there, or do any other act or thing, individually or jointly with plaintiff, in Alaska or elsewhere. The contract does not provide that Gates shall locate or acquire mines or other property in Alaska. He

did not agree to locate or acquire jointly with plaintiff nor for plaintiff. There is nothing on the face of the contract or pleading which shows that it was the intention of either party that plaintiff was to have or acquire any title in mines in order property in Alaska except by purchase and conveyance from Gates. A grubstake contractor, whether named in the notice of location or not, acquires title as an original locator by virtue of his individual interest in the original location, and without conveyance. Plaintiff's purchase of a 20 per cent. interest gave him no status as a locator, but only as a purchaser. He is not connected as an original locator with the act of location, but is a mere purchaser from or under the original locator. There is no agreement that any mine shall be located in Alaska, nor any allegation that such location was made by Gates; it follows that the contract cannot be considered a grubstake contract.

4. It is a contract of present purchase of a specified quantity of interest in property to be thereafter acquired by the defendant in Alaska. It is an executed contract on the part of the plaintiff. He has paid the agreed consideration, and has no other duty to perform. He alleges the acquisition of property by defendant in Alaska, and appeals to equity to specifically enforce performance of the contract to convey his moiety, and for an accounting for profits therefrom.

Admitting the contract and the receipt of the consideration, the defendant says, by demurrer, that equity ought not to enforce specific performance, because (1) to do so would be unjust and inequitable, and (2) because the contract is too uncertain and indefinite to be specifically enforced.

The rule in this class of cases is announced by the Supreme Court of the United States in the case of McCabe v. Matthews, 155 U. S. 550, 15 Sup. Ct. 190, 39 L. Ed. 253, as follows:

"A decree for the specific performance of a contract for the sale of real estate does not go, as a matter of course, but is granted or

withheld according as equity and justice seem to demand in view of all the circumstances of the case. Pratt v. Carroll, 8 Cranch, 471, 3 L. Ed. 627; Holt v. Rogers, 8 Pet. 420, 8 L. Ed. 995; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109, 32 L. Ed. 500."

And in Willard v. Taylor the Supreme Court said:

"When a contract is of this character, it is the usual practice of courts of equity to enforce its specific execution upon the application of the party who has complied with its stipulations on his part, or has seasonably and in good faith offered, and continues ready, to comply with them; but it is not the invariable practice. This form of relief is not a matter of absolute right to either party; it is a matter resting in the discretion of the court, to be exercised upon a consideration of all the circumstances of each particular case. 'The jurisdiction,' said Lord Erskine, 'is not compulsory upon the court, but the subject of discretion.' The question is not what the court must do, but what it may do under the circumstances, either exercising the jurisdiction by granting the specific performance or abstaining from it. * * *

"The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity. No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for, if that result would follow, the court will leave the parties to their remedies at law unless the granting of the specific relief can be accompanied with the conditions which will obviate that result."

Of the established doctrines and settled principles of equity those which particularly apply to and control the action of the court in this case are: (1) In order to obtain a specific performance of a contract, its terms should be so precise as that

neither party can reasonably misunderstand them. If the contract be vague and uncertain, a court of equity will not enforce it, but will leave the party to his legal remedy. Colson v. Thompson, 15 U. S. (2 Wheat.) 336, 4 L. Ed. 253; Preston v. Preston, 95 U. S. 200, 24 L. Ed. 494; Burnett v. Kullak, 76 Cal. 535, 18 Pac. 401; Smith v. Taylor, 82 Cal. 533, 23 Pac. 217; Stanton v. Singleton, 126 Cal. 657, 664, 59 Pac. 146, 47 L. R. A. 334; Odell v. Morin, 5 Or. 96. (2) Equity will not specifically enforce performance of a contract which is automatic, renewing, and perpetual in its action upon the defendant. Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 358, 19 L. Ed. 955; Texas Ry. Co. v. Marshall, 136 U. S. 393, 407, 10 Sup. Ct. 846, 34 L. Ed. 385; Ross v. U. P. Ry. Co., Fed. Cas. No. 12,080; Morrison v. Rossignol, 5 Cal. 65; Stanton v. Singleton, 126 Cal. 657, 665, 59 Pac. 146, 47 L. R. A. 334; Clarno v. Grayson, 30 Or. 144, 46 Pac. 426. (3) It must appear that the specific enforcement will work no hardship or injustice, for if that result would follow the court will leave the parties to their remedies at law. Willard v. Tayloe, 75 U. S. (8 Wall.) 557, 567, 19 L. Ed. 501; Cathcart v. Robinson, 30 U. S. (5 Pet.) 264, 8 L. Ed. 120; Randolph v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655, 34 L. Ed. 200; Agard v. Valencia, 39 Cal. 292, 303; Miller v. Butterfield, 79 Cal. 62, 21 Pac. 543; Prince v. Lamb, 128 Cal. 120, 129, 60 Pac. 689; Pomeroy on Cont. § 175.

The contract in this case provides that the defendant does agree to convey to the plaintiff "a twenty (20%) per cent. interest in any and all property which said Gates shall acquire, either by location, purchase, or otherwise, in the territory of Alaska." The contract names a consideration of one dollar, but the complaint, in doubtful and halting language, alleges a larger sum. No time is fixed for the completion of the contract, or any part of it. No class or kind of property is mentioned as in contemplation of the parties. Was it intended to include both real and personal property, placer and quartz

claims, mining leases, and contracts of purchase? Was it intended to include mortgages, notes, and other evidences of debt due to Gates; his watch, clothes, household goods, and home, if any such he acquired in Alaska; real and personal property acquired by gift, devise, and descent; or only those placer mining claims which he located under the law, or purchased in due course of business? When is it intended that this automatic division of defendant's accumulations shall cease? Will it continue during the lifetime of both parties, or of only one, and which one? If the court shall divide the present accumulation of defendant's property, will it be required to make another division next term, and so on indefinitely, and finally to divide his estate at his death in pursuance to this contract? Was it intended that the plaintiff should pay any portion of the purchase price of the property bought by the defendant under the terms of this contract—20 per cent. or any other part—or was it intended that plaintiff should receive one-fifth of all property purchased by Gates, though it cost him the value of the property sued for in this action? The plaintiff sues for a division of the profits of working the mines. What reciprocal relations are to be presumed in that regard? Is the defendant to take all risks as a trustee in invitum, to pay the plaintiff 20 per cent. when there are profits, and meet all losses out of his own funds? Or is he forbidden, on pain of that result, to engage in mining or other business enterprise in Alaska?

Plaintiff alleges that with the advances made by him "Gates was enabled to come to Alaska, and there to acquire, by location, purchase, and otherwise, various properties, the description of some of which is unknown to the plaintiff, and the description of the others is as follows:" and then follows a description of seven valuable mines, alleged to be worth $750,-000. He does not state what part of these mines were acquired by location, purchase, or otherwise, and, since the plead-

ing must be taken most strongly against the pleader, it will be presumed that defendant purchased all of them at their fair value. Was it intended that plaintiff should pay any portion of the purchase price of the property under the contract—20 per cent. or any other part? Or was it intended that plaintiff should receive one-fifth of all the property purchased by Gates, though it cost him its full alleged value. In my judgment this contract is not so precise in its terms that neither party can reasonably misunderstand it; on the contrary, it is so vague and uncertain that the court cannot enforce specific performance without creating and enforcing additional terms and conditions, which are not provided for therein.

Another objection to its specific enforcement is that it has no time limitations, it is automatic, renewing, and perpetual. If the court should adjust these quasi partnership accounts, and decree a specific division of the present surplus, it may be required to repeat the labor and decree at the next term, and so on from term to term, so long as the defendant lives. This principle was involved in two cases decided by the Supreme Court of the United States. In Texas, etc., Ry. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, the facts were that for a bonus of money and lands paid to it by the citizens of Marshall, Tex., the railroad company agreed to "permanently establish its eastern terminus" and shops at Marshall. After remaining there eight years the railroad took from Marshall its terminal advantages, and the city brought suit to enforce the agreement. The court denied the prayer of the bill, and held: (3) "That if the contract were to be interpreted as one to forever maintain the eastern terminus and the shops and Texas office at Marshall, without regard to the convenience of the public, it would become a contract that could not be enforced in equity," and "(4) that the remedy of the city for the breach, if there was a breach, was at law." And in delivering the opinion of the court Justice Miller said:.

2 A.R.—34

"If the court had rendered a decree restoring all the offices and machinery and appurtenances of the road which have been removed from Marchall to other places, it must necessarily superintend the execution of this decree. It must be making constant inquiry as to whether every one of the subjects of the contract which have been removed has been restored. It must consider whether this has been done perfectly and in good faith, or only in an evasive manner. It must be liable to perpetual calls in the future for like enforcements of the contract, and it assumes, in this way, an endless duty, inappropriate to the functions of the court, which is as ill-calculated to do this as it is to supervise and enforce a contract for building a house or building a railroad, both of which have in this country been declared to be outside of its proper functions, and not within its powers of specific performance." 136 U. S. 393, 406, 10 Sup. Ct. 846, 849, 34 L. Ed. 385.

And in the case of Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 358, 19 L. Ed. 955, where a similar question was involved, the court declared that:

"The agreement being for a perpetual supply of marble, no decree the court can make will end the controversy. If performance be decreed, the case must remain in court forever, and the court to the end of time may be called upon to determine, not only whether the prescribed quantity of marble has been delivered, but whether every block was from the right place, whether it was sound, and whether it was of suitable size or shape or proportion."

The principle is also denounced in Stanton v. Singleton, 126 Cal. 657, 665, 59 Pac. 146, 47 L. R. A. 334, and Clarno v. Grayson, 30 Or. 144, 46 Pac. 426. The contract at bar stipulates for renewing and perpetual liabilities, without limit of time, the performance of which cannot be consummated or concluded by a single decree. Such a contract cannot be specifically enforced in equity. Pomeroy on Contracts, § 312.

Another fatal objection to the contract is that it would be inequitable and unjust to enforce it. Why a sane or sober man should sign it, or a fair-minded man should ask a court of equity to enforce it under such circumstances, is not clear to the court. Conceding that plaintiff paid to the defendant the sum of $1,000 and admitted payment of the $11,225 men-

tioned in the complaint, still for that consideration he now asks the court to compel conveyance to him of a fifth interest in property worth $750,000, and the same interest in $175,-000 profits, and reserves the right to compel a further proportionate division so long as the defendant lives in Alaska. The disproportion is so great as to shock the conscience, and to brand the transaction as inequitable and unjust.

There is another element of inequity in the case, however, which is a bar to the relief prayed for. The court must presume, from the allegations of the complaint, that the defendant purchased all of these mining claims for their fair value, and the rule is well established that under a contract such as this is the plaintiff cannot recover except upon the allegation and proof that he paid his proportion of the purchase price. In the case of Miller v. Butterfield, 79 Cal. 62, 21 Pac. 543, a similar contract was construed, and the court said:

"The true construction of the contract appears to be this: That the Millers were to board Butterfield while he employed his time prospecting, and that as to any mines discovered and located by him (found) pending the agreement, while it was performed by them, all were to be tenants in common, with equal shares. As to mines bought, the parties were also to be tenants in common with the like interest, but this only upon the condition, necessarily implied, that they should contribute equally to the purchase fund. * * * Certainly they could not, one or more of them, allow another to make a purchase with his own funds, and at his own risk, and, without being obliged to reimburse him in case of loss, claim the advantage of the bargain in case of gain."

And in the case of Prince v. Lamb, 128 Cal. 120, 129, 60 Pac. 689, 692, where another similar contract was construed by the Supreme Court of California, the court said:

"For all that appeared from the complaint, the property involved in the case may have cost the defendant, Lamb, more than the alleged value of it. In that event, it would be grossly inequitable to compel him to turn over the half of it for no greater consideration than $50."

And in this case it is not shown to the court how much the defendant paid for the valuable mines purchased by him, and for all that the court knows they may have cost him an amount equal to their alleged value, $750,000. It would be grossly inequitable to compel him to convey a fifth interest thereof, with a fifth of the alleged profits of $175,000, and to declare against his future accumulations in Alaska an automatic and perpetual peonage of a like amount, for the consideration mentioned either in the contract or complaint.

The contract is vague, uncertain, perpetual, inequitable, and unjust; it is such a contract as a court of equity ought to deny specific performance. The plaintiff must recover his damages at law. Hume v. United States, 132 U. S. 406, 10 Sup. Ct. 134, 33 L. Ed. 393. The demurrer to the complaint will be sustained, but the decree entered must reserve plaintiff his remedy at law.