[Civ. No. 3165.   Third Appellate District.—December 22, 1926.]

E. I. LANE, Respondent, v. THE FEATHER RIVER LUMBER COMPANY (a Corporation), Appellant.

[1] CONTRACTS — LOGS AND TIMBER — CONSIDERATION — CONDITIONS— EVIDENCE — BURDEN OF PROOF. — In this action to recover extra compensation and damages for breach of an oral contract for falling and delivering logs, where it was agreed that if as a result of the demands of the employees of plaintiff and defendant the working day was reduced from ten hours to eight hours that plaintiff should receive extra compensation, the burden of proof was upon plaintiff to prove that the condition arose which entitled him to the extra compensation.

[2] ID. — CONDITIONS—PERFORMANCE—EVIDENCE.—In such action, the evidence failed to show that plaintiff was compelled to go to the eight-hour day.

[3] ID.—PARTIAL PERFORMANCE—COMPENSATION.—In such action, the fact that defendant reduced the daily working hours for a single week is not sufficient justification for awarding plaintiff extra compensation for the whole season.

[4] ID.—ACCORD AND SATISFACTION — PLEADING — DEFENSES. — In such action, where defendant claimed that the monthly payments made to plaintiff constituted progressive accords and satisfactions as to all demands, statements, and logging done prior to each, such defense was not available where defendant did not plead it.

(1) 38 C. J., p. 193, n. 4. (2) 38 C. J., p. 193, n. 5. (3) 38 C. J., p. 190, n. 57. (4) 1 C. J., p. 573, n. 3.

APPEAL by defendant from a judgment of the Superior Court of Plumas County. J. O. Moncur, Judge. Reversed.

The facts are stated in the opinion of the court.

L. H. Hughes, McLaughlin & McLaughlin, C. E. McLaughlin and C. P. McLaughlin for Appellant.

H. B. Wolfe, Hindsdale & Metteer, Charles A. Tuttle and H. T. Hiatt for Respondent.

FINCH, P. J.—The plaintiff recovered judgment in the trial court and the defendant has appealed.

About March 1, 1923, the parties entered into an oral contract "whereby plaintiff was to fall, limb, buck and deliver on board the cars . . . logs from an agreed logging area . . . for the price or sum of nine dollars per thousand feet." The following allegations of the complaint are denied by the answer: It was agreed that "if as a result of the demand of the employees of plaintiff the working day was reduced from ten hours as theretofore in effect to eight hours that the price per thousand feet should be ten dollars instead of nine dollars. . . . After the commencement of logging operations under said contract the employees of plaintiff and the employees of defendant refused to continue their employment working ten hours a day and from and after April 25th, 1923, the employees of plaintiff did work only eight hours per day." The demand is for compensation at the rate of $10 per thousand feet. As a sec-

4. See 1 Cal. Jur. 135; 1 R. C. L. 202.

ond cause of action it is alleged that it was agreed "that work under said contract was to be commenced as soon as weather conditions permitted in the spring of 1923, and was to continue so long as defendant operated its sawmill and thereafter and until the mill pond of said defendant was filled with logs; that pursuant to such contract . . . plaintiff commenced work thereon on or about the 10th day of March, 1923, and diligently and continuously prosecuted the same until on or about the 8th day of November, 1923, at which time defendant contrary to the agreement . . . stopped logging operations by this plaintiff and refused to permit plaintiff to continue operations under said contract although at this time weather conditions permitted logging operations and said sawmill of defendant continued in operation and that such operation under said contract could have been carried on to and including the 3rd day of December, 1923, to the damage of this plaintiff in the sum of $6,600." The court found in accordance with the allegations of the complaint and gave judgment on the first cause of action for the balance due the plaintiff for services performed, computed at the rate of $10 per thousand feet, and, on the second cause of action, damages in the sum of $3,821.15.

At the time the agreement was made George Laws was the manager of the defendant corporation. The terms of the agreement must be gathered from conversations between the plaintiff and Laws. Relative to the particular conversation upon which the plaintiff relies, he testified: "I says, 'I want $9 a thousand for all of the logs delivered under the present conditions and if I am forced to go to an eight-hour day, I want a dollar a thousand more. . . . I have learned during the winter, or heard a great deal of agitation for the eight-hour day among the workers and I am positive in my own mind that they are going to make a demand for the eight-hour day and I think they will win and I won't take a contract to deliver logs without some protection, because if we have to go to the eight-hour day, as you know, it will cost me more money than it will under a ten-hour day,' and he says he didn't think there would be an eight-hour day, and I says, 'Well, I am pretty close to the most of the men and I am satisfied there will be.' He says, ' . . . I suppose if your wobbly camp . . . asks for eight hours you will expect that dollar a thousand extra, or you will want

that dollar a thousand extra.' I says, 'Yes, I will want it, Mr. Laws, but I know you well enough to know that I won't get it, but *if you go eight hours or any of the rest of them go eight hours, I want the dollar a thousand extra and will expect the dollar a thousand extra.'* He says, '*That is all right,* because I won't go eight hours. . . . You know well enough that I can't afford to go eight hours under the conditions here.' I says, 'I realize that very well, Mr. Laws, and I don't want to go to it any more than you do, but I think we will be forced to and in that event I would go broke trying to log at a ten-hour price at an eight-hour day.' . . . He says, 'That will be all right. . . . Don't think there will be anything about the eight-hour day anyhow.' " Those parts of the foregoing testimony which are herein italicized appear to constitute the agreement relative to the alleged extra compensation of one dollar a thousand feet. While Laws testified that he did not agree to pay the plaintiff such extra compensation under any conditions, it must be presumed, for the purposes of this appeal, that the plaintiff's testimony is true and that the following statement in respondent's brief is a correct inference from the evidence: "The offer of respondent for additional compensation was conditioned upon appellant or the other lumber mills going to the eight-hour day."

Plaintiff commenced operations about March 10th. He testified: "I started camp, built lots of roads. The fallers started in falling timber on or about the 20th of March, I think, and done everything necessary to get going. Q. And when did you start the delivery of logs? A. On the 8th day of May, 1923. . . . On the 25th of April, the morning of the 25th of April, my employees refused to go to work—quit in a body, every man except my foreman and he stayed to take care of my horses. The rest of them all left camp, demanding an eight-hour day, among other things; an eight-hour day, sanitary conditions, etc., and did not return to work again until the 7th day of May. . . . They came back under the eight-hour day. Q. Was it possible thereafter, and during the season, for you to secure employees to work ten hours a day? A. It was not. Q. What happened, if you know, at the Feather River Lumber Company, at the same time, concerning labor? A. They went on a strike the same day and went back to work the same day—the 6th of May. I heard that

the Feather River had settled with them, granting them the eight-hour day, so I went down to see Mr. Laws and he told me that he had settled, and that he was going to work Monday morning under the eight-hour day and for me to go back to work, which I did. . . . Q. Did you later have agitation in your camp about the length of day? A. I did. My men heard that I was trying to go back to a ten-hour day and quit. . . . They stopped work one whole day over it. . . . Labor was very short. . . . Q. Did Mr. Laws ever notify you that he had gone back to a ten-hour day? A. He did not. Q. Did he ever make any demand on you that you go back or attempt to go back to the ten-hour day? A. He did not. . . . Q. Did you make any effort to secure other employees? A. Well, no particular effort, no, because Mr. Laws said to lay off until the thing was settled and I laid off until he told me to go back to work under the eight-hour day. Q. Do you know of any other logging camp, Mr. Lane, in Plumas County, that operated eight hours a day during the season of 1923 for any length of time? A. Yes, sir; the Feather River Lumber Company. . . . I have heard that they worked ten hours on the eight-hour basis with the pay for overtime for the balance of the season. . . . Their camp ran approximately ten hours, but it was my understanding that they worked on an eight-hour day and got pay for overtime. Q. . . . Were you compelled to reduce the hours and wages or did you do it voluntarily? A. I was compelled to. It would have been utterly impossible for me to get men to work ten hours a day and Mr. Laws, or the Feather River Mill, was working eight. . . . I reduced the hours of labor simply on Mr. Laws' say so. . . . My men, personally, made no demand on me. The demand came through the office of the Feather River Lumber Company, through their committee of strikers, delivered to me by Mr. English. . . . My men made no personal demands. . . . They said that it was a general strike and they were going out and not going to work until they got their eight-hour day. . . . Q. When Mr. English gave you that copy of the strikers' demands, did he direct you to comply with it? A. He didn't. . . . He gave it to me as a demand that had been made on them."

Laws testified that he never asked plaintiff "to resume work on the basis of eight hours per day for his employees." Laws further testified, and this testimony stands uncontra-

dicted: "We had a strike in the mill, not in the woods. . . .
The woods never stopped a minute. . . . We had plenty of
men at all times. Our time book will show it." Mr.
English, who was chief clerk and bookkeeper of defendant,
testified that the defendant's logging camp did not close
down at all during the season; that it operated on the basis
of eight hours a day only from May 7th to 12th; that there
was no shortage of men during the season; that "we revised
our wage schedule in the mill—in the factory, and our log-
ging camp kept right on at the same rate"; and that the
men in the logging camp were paid no more after the strike
than before.

April 25, 1923, plaintiff received a letter from Laws con-
taining the following: "When I met you in San Francisco
you spoke of wanting $1.00 per thousand feet more for logs,
providing the mills went to 8 hours and I made you no
answer to this question. Please be advised that no matter
what the hours will be, we will pay you $9.00 per thousand
feet for logs on cars at Gullings and no more." Plaintiff
testified that on the 6th of May "I went to see Mr. Laws.
. . . I says, 'I received your letter, Mr. Laws, but I didn't
take it seriously, because you know it wasn't according to
our contract.' He says, 'Well, that is all you are going to
get, anyhow. If you don't like it you can quit.' I says,
'Mr. Laws, you know I can't quit, I have got all these logs
down; I have bought my trucks and went in debt about
fourteen thousand dollars and I can't quit now and you
know it. . . . He says, 'That is all you are going to get,
anyhow.' I says, 'I am going ahead on this contract as
agreed and if you don't pay me, I am going to sue you for
the money, but I simply can't quit now,' and he accepted the
logs after that, with the understanding." June 16th the
plaintiff signed a receipt for "balance in full to May 31st,"
computed on the basis of $9 per thousand feet. In explana-
tion thereof the plaintiff testified: "When I went to get my
first payment on the 16th of June, they wouldn't give it to
me unless I signed a receipt in full. . . . I read it and re-
fused to sign it. I went back to Portola and tried every
way that I could to . . . get money to meet my payroll and
other expenses, without collecting that money and found
that it was utterly impossible, that I would go bankrupt if I
didn't get that money and went back and signed the receipt

under protest, telling Mr. Laws that I did so simply to keep from going bankrupt." Plaintiff was not asked to sign a receipt for subsequent monthly payments, but each month he was given a detailed statement "showing his credits and his detailed debits," computing the amount due him for logs delivered at $9 a thousand. At the close of the season the defendant tendered the plaintiff a check for the balance due him, computed at $9 per thousand, on condition that the plaintiff sign a receipt in full. This the plaintiff refused to do and thereupon commenced this action. During the whole season the defendant conducted a logging camp of its own and delivered logs to the same mill-pond at which the plaintiff's logs were delivered. It is conceded that this was not a violation of the terms of the contract.

[1] The burden was upon the plaintiff to prove that the condition arose which entitled him to the alleged extra compensation. [2] The evidence fails to show that he was compelled to go to the eight-hour day. He testified that he made no effort to secure men who would work ten hours a day and that the defendant continued to operate its logging camp for ten hours a day. According to his own testimony, the condition upon which he was to receive the extra compensation was that the defendant "go eight hours or any of the rest of them go eight hours." It is a fair inference that this condition had reference to the working hours in defendant's logging camp, because the work therein was of the same character as that in plaintiff's camp and defendant's mill employees were paid by the hour. [3] The mere fact that the defendant reduced the daily working hours for a single week is not sufficient justification for awarding plaintiff the extra compensation for the whole season, particularly when he knew that the defendant had returned to the ten-hour day. Laws was without authority to order or direct the plaintiff to adopt the eight-hour day. If such direction was in fact given, the plaintiff could not have been misled thereby into the belief that it constituted an implied consent by the defendant to pay the extra compensation, because Laws expressly stated at the time that such extra compensation would not be paid, a statement which the plaintiff fully comprehended, for he then threatened that he would sue in the event of defendant's failure to make such payment. Neither was plaintiff misled into the permanent adoption of

the eight-hour schedule for the remainder of the season, because, as stated, he knew that the defendant had returned to the ten-hour day.

Even if the other contentions of the plaintiff be conceded, he was not entitled to the extra compensation of one dollar a thousand on all the logs delivered. While no logs were delivered prior to plaintiff's adoption of the eight-hour schedule, his employees worked ten hours a day from March 10th to April 25th in building roads, felling trees, and preparing logs for shipment. In so far as this work contributed to the total production of the season, the plaintiff had the benefit of the ten-hour day, and this fact must be taken into consideration in determining what, if any, extra compensation he is entitled to recover.

[4] Appellant contends that the monthly payments made by the defendant to the plaintiff "constituted progressive accords and satisfactions as to all demands, statements and logging done prior to each." That defense is not available here, however, because the defendant did not plead it. (*Berger* v. *Lane,* 190 Cal. 443, 447 [213 Pac. 45].)

What has been said applies with equal force to the second cause of action, the judgment for damages being based upon the theory that the plaintiff was entitled to $10 a thousand for all logs to be delivered by him.

It is deemed unnecessary to further discuss the alleged insufficiency of the evidence because other or additional evidence may be produced on the retrial of the case

The judgment is reversed.

Thompson, J., *pro tem.,* and Plummer, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1927.