[L. A. No. 7442.  In Bank.—February 21, 1923.]

## C. C. BERGER et al., Appellants, v. R. B. LANE, Respondent.

[1] ACCORD AND SATISFACTION — DISPUTED CLAIM — ACCEPTANCE OF AMOUNT LESS THAN CLAIM.—The general rule is that where the amount due on a claim is in dispute and a check for less than that amount is sent to the creditor with a statement that it is sent in full satisfaction of the claim, and the tender is accompanied by such acts or declarations as amount to a condition that if the check is accepted at all it is accepted in full satisfaction of the disputed claim, and the creditor so understands, its acceptance by the creditor constitutes an accord and satisfaction even though the creditor states at the time that the amount tendered is not accepted in full satisfaction.

[2] ID.—PLEADING.—The general rule is that he who relies upon an accord and satisfaction must plead and prove both.

[3] ID.—HONESTY OF DISPUTE.—While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be founded in good faith in order that an accord and satisfaction may result. Without an honest dispute an agreement to take a lesser amount in payment for the liquidated claim is without consideration and void. An arbitrary refusal to pay, based on the mere pretense of the debtor, whether for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule.

[4] BROKERS' COMMISSIONS—ACTION TO RECOVER—NONSUIT—ACCORD AND SATISFACTION.—A nonsuit is improperly granted in an action to recover a broker's commission on the sale of real estate, on the theory that there has been an accord and satisfaction in the acceptance of a check in an amount less than the claim, where the written contract authorizing the agents to sell the property provides for payment to them of a commission equal to the amount of the claim, the validity of the contract is not disputed, the amount fixed as commissions is not denied, it is admitted that plaintiffs were the procuring cause of the sale, no modification of the contract of agency is claimed, and the circumstances do not show anything upon which a disputed claim might be predicated.

[5] CONTRACTS—COMPROMISE—CONSIDERATION.—A mere refusal to pay cannot be made the basis of a consideration for a compromise in the absence of a *bona fide* dispute.

[6] ID.—DISPUTED CLAIM—TENDER OF LESSER AMOUNT—SATISFACTION—QUESTION OF FACT.—Whether there is a dispute concerning the

amount due on a claim and whether a tender made on condition that acceptance will be in full satisfaction, are primarily questions of fact for the trial court.

[7] Nonsuit—Review of Evidence—Inferences and Presumptions—Rule.—Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff in passing on a motion for a nonsuit. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff, and if contradictory evidence has been given, it must be disregarded, and the plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiff's claim. Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion, if made upon the close of the case, should be denied.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Reversed.

The facts are stated in the opinion of the court.

R. L. Horton and C. S. Anderson for Appellants.

Fred N. Arnoldy for Respondent.

SEAWELL, J.—This case is here for hearing after decision by the district court of appeal, second appellate district, division two. Our consideration of the case has satisfied us of the correctness of the conclusion reached in the opinion of that court, written by Mr. Justice Craig, and for practically the same reasons, but more elaborately

---

1. Acceptance or remittance of part of the amount of an unliquidated or disputed claim, accompanied with the statement that it is "in full," or words of similiar import, as assent to its receipt in full payment, notes, 1 Ann. Cas. 801; 16 Ann. Cas. 194; Ann. Cas. 1915A, 951; 4 A. L. R. 474; 14 L. R. A. (N. S.) 443; 27 L. R. A. (N. S.) 439.

stated, we have concluded that the judgment must be reversed.

The appeal is from a judgment of nonsuit. At the close of plaintiffs' case the court was of the opinion that the case made by them established an accord and satisfaction of a pre-existing claim and accordingly gave judgment against them. The vital questions about which the controversy centers and which must be found to be satisfactorily sustained by the evidence produced if the judgment of nonsuit is to stand are whether a *bona fide* dispute, or, indeed, any real dispute, is shown to have existed between the parties as to the amount due under an original contract, and, if so, was the acceptance of a check for a lesser amount, under the circumstances of the transaction between the parties, such an act as amounted to a condition that it was tendered and accepted in full satisfaction of a disputed pre-existing claim, and did the plaintiffs so understand it? These questions can only be answered by an examination of the evidence in the case.

Respective counsel seem to have fallen into the error of treating as evidence in the case testimony given by defendant, Lane, which had been stricken from the record by the trial court of its own motion.

The facts need only to be briefly stated. The defendant, owner of a tract of land containing forty acres, situate in the county of Los Angeles, and plaintiffs, real estate agents, entered into a written contract whereby the latter were authorized by the terms of said contract to sell said forty acres "at and for the sum of $700 per acre, payable as follows—said Sexsmith, Jenal and Berger to receive their commissions of five per cent." Said contract of agency, or listing order, as it is sometimes referred to, bore date October 6, 1919. A printed form was used, the open spaces being supplied by data wholly furnished by defendant, Lane, and the insertions in writing were made by him. The parties had no previous acquaintance and defendant's visit at the office of the plaintiffs was unsolicited.

Eight days thereafter, to wit, October 14, J. F. Jenal, a member of said realty firm, procured a purchaser, Ralph H. Petz, and an agreement to purchase was on that day formally executed. The other persons present and witnessing said transaction were Jenal and a brother of Petz.

Subsequently, a deed pased from Lane to Petz, pursuant to their agreements, thereby completing the transaction. The purchase price agreed upon and inserted in each of said instruments was placed at $28,000. At the close of the transaction of October 14th defendant, Lane, addressing himself to Petz, remarked: "Who is going to take care of Mr. Jenal?" The latter, as the record indicates, was surprised at the inquiry and replied that he did not know there was any doubt as to who was to take care of him. Mr. Lane then said: "Oh, yes, this has got to net me $28,000." Jenal continued: "'Well,' I said, 'I did not think there was any question as to who was to take care of me.' 'Well,' Mr. Lane says, 'I want this to net me $28,-000,' and I said, 'Well, this is not what my partner, Sexsmith, told me.' 'Well,' he said, 'I can't help it; I want this to net me $28,000.'" And "there was talk *pro* and *con*" and Mr. Lane suggested, "I am willing to 'donate' Mr. Jenal $500 and I think the Petz boys ought to make up the rest, or some." The effort of the defendant to persuade or induce the Petz brothers to pay a commission of $250 seems not to have been unacceptable to Jenal, but as the Petz brothers were in no way obligated to pay any part of a commission they declined to commit themselves further.

Jenal, prior to this time, had not seen the contract of agency or listing order, and, as a matter of fact, did not know positively that the agreement had been reduced to writing. On the day following he sought out his partner, Berger, and told him of his experience of the previous day. He was somewhat disturbed by the attitude of Lane. Then, for the first time, he examined the contract. On the following day, to wit, October 16th, Berger called on Lane and addressed him in this manner: "Mr. Jenal informed me that you would only pay $500 commission. . . . I have a contract in the office where you agreed to pay us five per cent." Lane responded by asking him if he had the contract with him, and was told that he did not have it with him but that it was at his office and Lane could inspect it by calling there. Berger had no further conversation with Lane, but was told by his partner, Sexsmith, that the latter called at the office and after examining the contract said: "Well, I will not pay it unless you sue me." No other word or communication is shown to have passed between

any of the parties until November 3, 1919, on which date defendant, Lane, sent to Jenal a letter inclosing a check for the sum of $500. Omitting formal parts, the check was in the following words: "Pay to the order of J. F. Jenal Five Hundred ($500) Dollars." The letter was as follows:

"Hollywood, Nov. 3, 1919.

"Mr. Jenal.

"Dear sir: I enclose my check for $500 as your commission for sale of lot 755 BL 1000 to Petz Bros. as agreed upon at time of sale & as part of terms of said sale.

"Very truly,

"R. B. LANE."

Jenal retained the check. The bank's indorsement shows it to have been cashed November 5, 1919. On the day following, November 6th, Jenal addressed the following letter to Lane: "Your check for $500 to apply on commission to Messrs. Jenal, Berger and Sexsmith received. The balance of the commission as per your written agreement is the sum of $900. This is now due so please send check for same at once." Lane made no reply to this letter.

On December 6, 1919, plaintiffs brought their action to recover the balance of said commission, to wit, $900, having given credit on account for the $500 paid by check of November 5th. Defendant answered by setting up accord and full satisfaction of plaintiff's demand as a defense to the action.

[1] The general rule, which is but an amplification of our code sections (Civ. Code, secs. 1521, 1523) defining satisfaction and accord, is "that where the amount due is in *dispute* and a check less than that claimed is sent to the creditor with a statement that it is sent in *full satisfaction* of the claim, and the tender is accompanied by such acts or declarations as. amount to a condition that if the check is accepted at all it is accepted in full satisfaction of the disputed claim, and the creditor so understands, its acceptance by the creditor constitutes an accord and satisfaction even though the creditor states at the time that the amount tendered is not accepted in full satisfaction." (*Lapp-Gifford Co.* v. *Muscoy Water Co.,* 166 Cal. 25 [134 Pac. 989]; *B. & W. Engineering Co.* v. *Beam,* 23 Cal. App. 164 [137 Pac. 624].)

[2] The general rule is that he who relies upon an accord and satisfaction must plead and prove both. (*Simmons* v.

*Oullahan,* 75 Cal. 508 [17 Pac. 543].) **[3]** While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be founded in good faith. Without an honest dispute an agreement to take a lesser amount in payment for the liquidated claim is without consideration and void. An arbitrary refusal to pay, based on the mere pretense of the debtor, made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule. (1 Corpus Juris, sec. 75, pp. 554, 555, and notes.)

It is clear that the agreement of the defendant to pay a commission of five per cent on $28,000 is an agreement to pay a fixed and definite sum. It will be kept in mind that the contract has not been assailed on any ground of invalidity or unfairness. No suggestion of repudiation on any equitable or legal grounds is to be found in the record. So far as evidentiary disclosures are concerned its validity is not open to dispute even on trivial grounds. It was a contract wholly prepared by defendant, and standing alone it is unassailable. The only means by which it could have been destroyed was to show that a subsequent dispute arose as to the amount due thereunder and that a lesser sum was consented to and accepted in full satisfaction of the greater sum agreed upon by the contracting parties.

The conversation on which defendant must rely as furnishing a basis for accord as a defense occurred immediately *after* Petz had signed an agreement on October 14th binding himself to purchase the property. Lane, who should have entertained no doubt as to who was to pay agent Jenal, in the face of his contract to do so himself, asked who "was to take care of Jenal." Why he should have asked such a question or felt at all uneasy or interested in the matter, unless he was conscious of a legal liability, is a circumstance not to be left out of the case. In this conversation his obligation to pay the commission was brought specifically and pointedly to his attention and he did not at any time dispute or deny it. The most he said, with circumstances calling upon him to speak in unequivocal and emphatic terms, was: "This [sale] has got to net me $28,000." Upon being reminded by Jenal that such was not the contract according to the information furnished him

by Sexsmith, and by the further observation made by Jenal "that there was no doubt existing as to who was to pay him," defendant spoke evasively and stated that he was willing to "donate" Jenal $500 and that "the Petz boys ought to come through, too; the Petz boys ought to make up the rest, or some." And so, too, when Jenal said: "I did not think there was any question as to whom was to take care of me," Lane replied, "I want this to net me $28,000." Lane made no claim that the understanding of the parties was different from what was contended for by Jenal, and contented himself with unsatisfactory replies.

One more incident may be added to the above. Berger testified that a short time after October 14th he was told by Sexsmith that Lane had called upon him and, after inspecting the contract of agency, said, "Well, I will not pay it unless you sue me." If anything further was said it does not appear in the record, and no unfavorable inference may be indulged against plaintiffs as to what may have been said.

The foregoing excerpts present in substance all the oral evidence found in the case which in any way throw light upon the question of a dispute or to an acceptance of the $500 in full satisfaction of plaintiff's claim.

[4] The execution or validity of the contract was not disputed. The amount fixed as commissions or compensation agreed upon was not denied. That plaintiffs were the procuring cause of sale was admitted. No other or different agreement, written or parol, or understanding, express or implied, modifying the contract of agency was set up or asserted or claimed. No complaint was made as to the time, place, or condition of performance. Nothing was said upon which a dispute might be predicated. Clearly, the attitude of defendant appears to be that of a person endeavoring to release himself from the full consequences of a binding contract. This view is strengthened by the offer to "donate" $500. Rather a quick and firm denial of any liability whatsoever would have been the expected retort of a person who felt that an effort was being made to extort money from him. The attempt to induce the Petz brothers, who in nowise were bound to pay any part of the commission, to bear a portion thereof, is another circumstance pointing in the same direction. The remark that he (Lane)

could not help what Jenal's partners had informed him in respect to the terms of the contract (which was a true statement of fact) was an expression of apparent indifference rather than a positive denial of indebtedness. The further remark that "I will not pay it unless you sue me" belongs to a class of loose expressions made use of under varying circumstances and should be considered in the light of the situation in which they are spoken. Sometimes they are used coercively and are intended to have a deterrent effect, and again they may be spoken to express a determination to stand on one's rights. In any event, the purpose of such an expression under the circumstances of this case could do no more than present an issue of fact to be determined by the court or a jury as any other fact in the case.

We are next brought to a discussion of the defendant's letter inclosing a check for $500, written some two or three weeks after the last conversation above reviewed, as bearing upon the issue of a dispute. The letter reads as follows: "I inclose my check for $500 as your commission for sale of lot 755 . . . to Petz Bros. *as agreed upon at time of sale and as part of terms of sale.*" (Italics ours.) The contract referred to is absolutely silent on the subject of commissions. The subject is not mentioned. That there was no parol agreement made at the time has already been fully shown, so this statement is at best erroneous and has no foundation in fact to support it.

[5] The rule that a mere refusal to pay cannot be made the basis of a consideration for a compromise in the absence of a *bona fide* dispute is treated in *Demars* v. *Musser-Sauntry etc. Co.*, 37 Minn. 418 [35 N. W. 1]. The principle there announced, and which we think applicable to the case at bar, is as follows:

"The defendant is entirely right in his law that the compromise of a disputed or doubtful claim is in itself a good consideration, and that no investigation into the character or value of the claim submitted will be gone into for the purpose of setting aside a compromise honestly made. It is sufficient if the parties entering into it thought at the time that there was a question between them. It is not even necessary that the question in dispute should be really doubtful, if the parties *bona fide* considered it so. The real consideration which each party receives under a compromise is

not the sacrifice of the right, but the settlement of the dispute. But, on the other hand, it is equally true that, to constitute a good consideration for a settlement by way of compromise, there must have been an actual *bona fide* difference or dispute between the parties as to their legal rights. There is an entire absence of evidence in this case tending to show any such dispute. There was certainly none as to the amount of plaintiff's claim. Neither was there any as to when it was due according to the terms of the contract. Swenson, who made the alleged settlement with plaintiff, did not claim that the contract was different from what plaintiff asserted it to have been, or that by the law the wages were not payable until the logs arrived at the boom. He simply asserted, according to plaintiff's statement, that he would not pay all the money because it was not 'the law of the company,' or, according to his own statement, because they 'didn't settle that way,' without giving any reason. A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion, and not compromise. There must in fact be a dispute or doubt as to the rights of the parties honestly entertained. The evidence of this is utterly wanting in this case.''

Lastly, we come to a consideration of the check and statement sent with it. The rule is that where the amount due is in dispute, as claimed here, and a check for a less amount is sent to the creditor with a statement that it is sent in full satisfaction of the claim, or language equivalent thereto is employed, and the tender is accompanied with such acts or declarations that it amounts to a condition that if the check is accepted at all it is accepted in full satisfaction of the disputed claim, and *the creditor so understands it,* its acceptance, even though the creditor states at the time that the amount tendered is not accepted in full satisfaction, constitutes an accord and satisfaction. An examination of the check and the accompanying statement will show that the language used does not measure up to the requirements of the leading authorities to be found on the subject. In all the cases that have been called to our attention in which a satisfaction has been held to have been conclusively expressed in writing the writing in some form shows without question that the acceptance of the inclosure

was clearly intended to be a satisfaction in full of the claim. This sometimes is shown by the express words used in the body of the check or by an accompanying receipt stating that the amount sent is in full of all demands. Of course, the statements, declarations, and acts of the parties are to be considered and weighed in arriving at the understanding of the parties, but they must be of such a character as to express in a clear manner the intention of the parties to be affected. Neither the language of the receipt nor the check here involved can be said to be conclusive on the case at bar. The plaintiffs with reasonable diligence notified defendant that the payment made was not to be considered in full satisfaction of the claim and that there remained a balance due. Neither Jenal nor any of his partners consented at any time to accept $500 in full satisfaction of the demand.

[6] Whether there was a dispute concerning the amount due and whether the tender was made on condition that acceptance would be in full satisfaction are primarily questions of fact for the trial court. (*Lapp-Gifford Co.* v. *Muscoy Water Co., supra; B. & W. Engineering Co.* v. *Beam, supra; Nassoiy* v. *Tomlinson,* 148 N. Y. 326 [51 Am. St. Rep. 695, 42 N. E. 715].)

We have reviewed the facts in this case in their relation to a judgment of nonsuit. In so doing we have been compelled to adopt the rules of law which apply to cases of nonsuit and which may be briefly summarized as follows: [7] Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiffs. If contradictory evidence has been given it must be disregarded. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].) The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiffs' claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 Pac. 381].) Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative

strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint the motion, if made upon the close of the case, should be denied. (*Bush* v. *Wood*, 8 Cal. App. 647 [97 Pac. 709]; *In re Estate of Daly*, 15 Cal. App. 329 [114 Pac. 787]; *Wassermann* v. *Sloss*, 117 Cal. 425 [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566]; *Lassen* v. *Southern Pac. Co.*, 173 Cal. 71 [159 Pac. 143]; *Kleist* v. *Priem*, 51 Cal. App. 32 [196 Pac. 72].)

If an inference can be said to flow from the language used by the defendant to the effect that "the sale has got to net me $28,000," or "I want this to net me $28,000," it is weakened by other testimony in the case. We find that the sale did not, as a matter of fact, net the defendant $28,000, as there were liens outstanding against the property which reduced the amount to some extent. Then, again, we find in the record the uncontradicted testimony of Berger to the effect that Lane was very anxious to sell the property and rid himself of it and told him not to turn down an offer of $650 an acre, and when asked by Berger if he would pay a commission on a sale at $650 he replied, "I will pay a commission on the price that I accept."

We are of the opinion that Petz brothers, whose testimony was offered by the plaintiffs, should have been heard, although offered as witnesses after plaintiffs formally closed their case, inasmuch as they were the only disinterested persons who were present and heard the full conversation about which the controversy arose. Upon a review of the situation we are of the opinion that the motion for a nonsuit was erroneously granted.

The judgment is reversed.

Wilbur, C. J., Waste, J., Kerrigan, J., Lawlor, J., Myers, J., and Lennon J., concurred.