[L. A. No. 9017.   Department One.—February 17, 1928.]

IRVING W. MARTINE, Appellant, v. CARL INGALLS et al., Respondents.

Dorsey & Campbell for Appellant.

Rowen Irwin and Rollin Laird for Respondents.

SEAWELL, J.—This appeal is taken from a judgment of nonsuit entered in an action brought by Irving W. Martine against Carl Ingalls in his personal capacity, and also as doing business under the firm name and style of Commercial Transfer Company, to recover damages for the death of his son, John Irving Martine, alleged to have been caused by the negligence of the respondent on the third day of March, 1924.

At the time of his untimely death the youth was but a few months past sixteen years of age and he was employed in the messenger service of the Western Union Telegraph Company, at the city of Bakersfield, this state. While thus employed he was crushed to death upon being thrown from or after falling from a bicycle which he had been riding by a truck drawing a trailer operated by R. L. Verrell, an employee of respondent, passing over his body.

At the time the accident occurred the paved roadbed was wet from intermittent showers. The accident, as recounted by the witnesses, occurred while both the driver of the truck and the deceased were traveling northerly on Union Street, near the point where said street is intersected by Sumner Street. The combined length of the truck, coupling, and trailer was approximately fifty feet. The course of the truck was northerly upon Union Street to Sumner Street and thence easterly upon said Sumner Street. The truck passed the deceased to the left some 150 feet distant from the southerly line of Sumner Street and continued its course until within a position to make a right turn into Sumner Street. The driver was proceeding to make the turn when the youth, who was riding at the right of the truck near the rear wheels, was seen to throw up his arms and apparently clutching at the side of the truck went down beneath its wheels and was instantly killed. Two persons, seemingly disinterested witnesses, gave testimony as to what they saw. Their positions were not such as to enable them to give a very satisfactory account as to the proximate cause of the fatality. Neither was able to say that the driver of the

truck did not give a timely signal of his intention to turn to the right into Sumner Street upon approaching it. Neither saw him give a signal. One of said witnesses did not observe the driver of the truck with respect to the question of signals until the proper time to give a signal had passed, while the other, who doubtless observed the driver in a casual way only, said that he did not see the driver indicate with his hand his intention to turn into Sumner Street, but he would not say that a signal was not given. The evidence, so far as any was given on the subject, was to the effect that the truck passed the youth some distance south of Sumner Street moving at the rate of twelve or fifteen miles per hour. Just what the position of the youth was with relation to the truck immediately upon being overtaken by it cannot be definitely determined. It does appear, however, that he did not undertake to pass the truck to the left, but continued to travel to its right either near the rear wheels or the coupling which connected the truck and trailer. His position was between the truck and the edge of the roadway. There is some ground to sustain the contention that he gained upon the truck after it had passed him, riding to its right. It is very questionable from the youth's position whether he would have been able to have seen a signal had one been given. The driver of the truck was called to the witness-chair by the plaintiff, but he was not interrogated on the subject of signals. It is not wholly improbable that the youth, who was riding to the right of and close to the rear wheels of the truck, with no thought of its turning into Sumner Street, became surprised or bewildered at the movement of the truck and, in his attempt to extricate himself from the peril of his position, by sudden movement of his bicycle caused it to skid or slip on the wet pavement, thus precipitating him to the ground. The day was described by witnesses as a "slippery day." This, of course, is not more than a probability, or perhaps a possibility. Something caused him to extend his arm or arms as if grasping for the rear of the truck for support. It is possible that an impact with the rear of the truck may have overbalanced the bicycle. There was sufficient road space accessible to the youth's right to have enabled him to avoid a collision with the truck, as it was moving

slowly even after it began to turn into Sumner Street, which makes it possible that some unexplained cause intervened to his misfortune.

We have read the record carefully and are forced to conclude with the trial court that whatever may have been the real proximate cause of the injuries which resulted in death, there is a failure of evidence to fix the legal responsibility thereof upon the truck driver. No facts of a substantial character were adduced from which the inference of actionable negligence may be reasonably drawn.

Negligence must be proved and cannot be presumed. By this we do not mean to say that it may not be established by facts and circumstances from which the inference of negligence reasonably follows. The facts and circumstances, however, which satisfy the law are lacking in the instant case. In arriving at this conclusion we have not lost sight of the rule which courts should apply in considering a motion for nonsuit, as announced in *Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45]; *Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]; *Anderson* v. *Wickliffe,* 178 Cal.. 120 [172 Pac. 381], and other cases cited by appellant.

Judgment is affirmed.

Curtis, J., and Preston, J., concurred.