[Civ. No. 5246. Second Appellate District, Division Two.—May 3, 1929.]

JAMES H. SHORTELL et al., Appellants, v. EVANS-FERGUSON CORPORATION (a Corporation) et al., Respondents.

F. Von Schrader and Barker & Keithly for Appellants.

Swanwick & Donnelly and Goudge, Robinson & Hughes for Respondents.

BURNELL, J., *pro tem.*—November 15, 1923, appellants signed the document set forth below and handed it, together with the $2,500 mentioned therein as a deposit, to respondent Evans-Ferguson Corporation (as agent for respondent California Trust Company), which thereupon executed an

acceptance of the offer contained therein. The document in question reads as follows:

"Wilshire-Fairfax Tract.

| Evans-Ferguson Corporation | W. H. Elwell |
| Sole Agents | Tract Manager |
| 508–9–10 California Bank Building | Office at |
| Phones: 824–507 | Wilshire Blvd. & |
| Metropolitan 2372 | Fairfax Ave. |
| Los Angeles, California. | Phones: 56489. |

"Los Angeles, California, 11–15, 1923.

"To California Trust Company.

"I hand you herewith my check for $2500.00 and request that you reserve for me that piece or parcel of land which it is proposed shall be known as lot 22 & 23 block 44, Tract No. 7555, and which tract is to be designated by you as Wilshire-Fairfax Tract.

"It is my understanding that the map of said tract has not yet been recorded, but that the same will be submitted for approval to the city of Los Angeles, and will be recorded as soon as approved by Evans-Ferguson Corporation and necessary officials and that you cannot sell or offer said land for sale in accordance with said maps until it is so recorded.

"It is my wish to purchase from you the lot aforesaid, provided the map or plat thereof is recorded. In the event that the map is recorded, I hereby offer to purchase the same from you upon the following terms, towit:

"Purchase price $25,000.00, payable as follows:

"$2500.00 now deposited with this reservation, to be applied on account of the cash payment, and the balance, $5833.33, on or before recording of map, $8333.34 on or before August 15, 1924, $8333.33 on or before May 15, 1925; all deferred payments to bear interest from date of this receipt at the rate of seven per cent per annum, payable quarterly, at 300 California Bank Building, Los Angeles, and all payments to be made to the California Trust Company.

"It is agreed that the purchase, if made, shall be subject to the following conditions, namely:

"(1) Subject to reservations, restrictions, conditions and/or easements, etc., over and upon said property.

"(2) The owner reserves the right to grade and improve said property in accordance with its plan of improvements

of the tract of which said property is a part, and either to remove soil from said lot or to place additional soil thereon.

"(3.) The owner at its option to furnish either (a) a contract of sale on terms, or (b) a good and sufficient deed conveying the property to the buyer, together with a guarantee of title showing the record title to be free and clear from incumbrance except . . . and conditions, restrictions, rights-of-way and reservations as hereinbefore provided. In case a sale be made on terms, the buyer to execute (a) a trust deed and note in the usual form adopted by the owner, or (b) at the owner's option, a contract of sale in the usual form adopted by the owner, upon the complete satisfaction of which the owner shall furnish a deed and guarantee as above specified.

"I agree that there are no promises, verbal understandings or agreements except as in this application set forth, and that any contract or deed hereinafter executed by me for the above property will supersede and merge this receipt.

"The owner reserves the right to return the above money to the undersigned at any time before a contract of sale is signed by the undersigned and approved by the owners.

"ROBERT H. ORGAN,
"JAMES H. SHORTELL,
"Address 7026 Melrose Ave.
"(Both married) Undivided half interest.

"The undersigned hereby accepts the deposit above mentioned, subject to all the conditions contained in the foregoing application.

"EVANS-FERGUSON CORPORATION,
"By W. H. ELWELL.
"SHORTELL & ORGAN & J. D. WEST.

GHZ."

In March, 1924, appellants were at their request released from their "obligations" under this agreement and the deposit returned to them, less, however, the sum of $516.25, which was retained, over their protest, as accrued interest on deferred payments. The present action is for recovery of that amount. Respondents plead and the trial court found that appellants had agreed to pay the $516.25 for the privilege of being relieved from their obligation to purchase, and had accepted the return of the balance of the deposit ($1,983.72) and the release as an accord and satisfaction.

The grounds upon which the appellants base their contention that the judgment against them was erroneous and should be reversed are thus stated in their opening brief:

"There was no accord and satisfaction, for the reason that there was no *honest* dispute upon which, under the law, an accord and satisfaction can be predicated, because under the contract of deposit defendants, if they agreed to the rescission, or mutually rescinded, were not entitled to deduct any sums of money whatsoever, as interest or otherwise, for the reason that (a) the contract under which the deposit was made was void for want of mutuality in that the owner could cancel same at any time; (b) the voucher check which was cashed by the plaintiffs did not show an acceptance by them of a lesser amount in full satisfaction of the larger amount due under the contract, but showed clearly on its face that the lesser amount was being sent 'less interest'; and (c) that the contract was void, because by statutes of 1907, page 290, the selling of lots by reference to an unrecorded map is prohibited, and the vendee may recover the money paid on such a contract."

An accord is thus defined: "An accord is an *agreement* to accept in extinguishment of an *obligation* something different from or less than that to which the person agreeing to accept is entitled." (Civ. Code, sec. 1521.) We have italicized the words "agreement" and "obligation" to emphasize the fact, first, that an accord, being an agreement, must be based on a valid consideration, and second, that that which is to be extinguished must be "a legal duty by which a person is bound to do or not to do a certain thing." (Civ. Code, sec. 1427.)

That an accord must be based upon a valid new consideration has been held repeatedly. (*Deland* v. *Hiett*, 27 Cal. 611 [87 Am. Dec. 102]; *Dobinson* v. *McDonald*, 92 Cal. 33 [27 Pac. 1098]; *Peachy* v. *Witter*, 131 Cal. 316 [63 Pac. 468]; *Lapp-Gifford Co.* v. *Muscoy Water Co.*, 166 Cal. 25 [134 Pac. 989]; *Sierra etc. Power Co.* v. *Universal Electric etc. Co.*, 197 Cal. 376, 387 [241 Pac. 76]; *Cloyne* v. *Levy*, 26 Cal. App. 637 [148 Pac. 224].) The consideration which respondents claimed and the trial court found to be the basis of the accord was the release of the "obligation" on the part of appellants to purchase the lots, and the cancellation of the agreement hereinabove set forth. If, therefore, that

agreement was void, the appellants were not obligated thereunder, they were under no legal duty performance of which the respondents could have enforced, its cancellation extinguished no obligation and the transaction was devoid of two of the essential elements of an accord: consideration and the extinguishment of an obligation.

■ Release from or cancellation of an illegal or void contract can never be a valid consideration, since the party "released" has neither been accorded a right which he did not already possess nor excused from the performance of any act which he could have been compelled to perform. The principle is thus stated in Page on Contracts: "While the parties to a contract may make such terms and select such consideration as they choose, the consideration selected must be the forbearance or acquisition of some legal right. If they select something which is not a legal right, the acquisition or forbearance of it constitutes no consideration, though the parties may believe otherwise. . . . If the forbearance is of what the promisee has no legal right to do . . . no consideration exists" (sec. 301). "The promise must be such as to offer a legal right or the forbearance of a legal right to which the promissor would not otherwise have been entitled" (Id., sec. 302). "Modification or abandonment of an illegal contract by mutual agreement cannot be a lawful consideration for a new contract based on such original contract, even if there is some additional consideration" (Id., sec. 512).

This brings us to the question of the validity of the agreement of November 15, 1923. That it must be construed as an offer on the part of appellants to buy and on that of respondents to sell lots by reference to an unrecorded map seems too plain to require any extended discussion. We have here a document requesting the reservation for the signers of two lots described only by reference to an unrecorded map, and which they state they desire to purchase at a specified price and on terms which are fully set forth, including a down payment or deposit of $2,500. It provides the time and amount of deferred payments and for interest thereon from the date of the instrument, payable quarterly; it has all the earmarks of an offer to buy, which, upon its acceptance by the Evans-Ferguson Corporation, became an agreement of sale, conditional, it is true, upon the actual recording of the map, but nevertheless such an

agreement as comes clearly within the purview of section 8 of the statute relating to sales or offers of sale of lots by reference to unrecorded maps. The statement as to the understanding on the part of appellants that the map had not been recorded and that respondents could not "sell or offer for sale said land in accordance with said map until it is so recorded" may have been incorporated in the agreement in a vain attempt to take it out of the statute, but if so, the ostrich of invalidity has not succeeded in concealing itself by hiding its head in the sands of verbosity.

The act above referred to requires the preparation and recording of maps of tracts laid out into lots for purpose of sale. Section 8 is as follows: "No person shall sell or offer for sale any lot or parcel of land, by reference to any map or plat, unless such map or plat has been made, certified, indorsed, acknowledged and filed in all respects as provided in this act, or was filed or recorded prior to the taking effect of this act and in accordance with the laws in force at the time it was so filed or recorded, and no person shall sell or offer for sale any lot or parcel of land by reference to any map or plat other than such recorded map or plat or true and correct copy thereof." The next section provides: "Every person who violates any of the provisions of this act is guilty of a misdemeanor . . . " (Stats. 1907, p. 290; Deering's Gen. Laws, Act 4574.) It has been held repeatedly that an agreement violative of this statute is void. (*King* v. *Johnson*, 30 Cal. App. 63 [157 Pac. 531]; *Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14]; *Young* v. *Laguna Land etc. Co.*, 53 Cal. App. 178 [199 Pac. 810]; *Smith* v. *Bach*, 54 Cal. App. 236 [201 Pac. 611]; *Hartzell* v. *Doolittle* 205 Cal. 17 [269 Pac. 527]; *Krause* v. *Marine Trust & Sav. Bank*, 93 Cal. App. 681 [270 Pac. 246]; *White* v. *Jacobs*, 204 Cal. 334 [267 Pac. 1087].) As said in *Young* v. *Laguna Land etc. Co., supra,* such a contract "was void from the beginning and is unenforcible." This being the case, it is manifest that a "release" from the "obligation" to perform was a mere nullity and conferred no right which appellants did not already possess. There was not only an entire lack of obligation on the part of appellants, but under the decisions of our courts they were legally entitled to the return of the entire amount paid in on the illegal contract,

and this notwithstanding their knowledge of the nonrecordation of the map.

In *Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14], the action was by a vendee under a contract violative of the statute in question, seeking recovery from the vendor of a portion of the purchase price which had already been paid to the latter. The court said: "Concluding, as we do, that the contract in question is void, it only remains to determine the rights of plaintiffs to recover in this action. There are authorities which, while not denying the general rule that an illegal contract cannot be enforced whether *malum in se* or *malum prohibitum*, hold that all the consequences which attend a contract contrary to public morals do not attend one which is purely *malum prohibitum*, and that in the latter case courts will take notice of the circumstances and will give relief if justice and equity require a restoration of money received by either party thereunder. (13 Cor. Jur., p. 411, sec. 341.) In such a case the complaining party is protected, the prohibition being for his benefit, and not being *in pari delicto* he is entitled to relief. (Id., p. 501, sec. 443.) By the weight of authority where money has been paid in consideration of an executory contract which is illegal, the party who has paid it may repudiate the agreement at any time before it is executed and reclaim the money. In such a case it is the duty of the court in furtherance of justice to aid one not *in pari delicto*, though to some extent involved in the illegality, but who, as here, is comparatively the more innocent, and to permit him to recover back money paid on a contract as the circumstances of the case may require." On appeal from the judgment rendered on the second trial of the same case (54 Cal. App. 236 [201 Pac. 611]), it was held: "The contract pursuant to which the money was paid by plaintiffs was for the purchase of certain lots referred to as delineated upon an unrecorded map, and hence, as declared by statute (see Stats. 1907, p. 290), it was null and void. Nevertheless, appellant insists that, as plaintiffs must be deemed to have had knowledge that the map was unrecorded prior to making the payments, they are estopped from maintaining an action to recover the sum so paid. In other words, appellant's claim is that parties by their acts may destroy and render nugatory the plain language of this

658

prohibitory provision. The contention is wholly without merit. As said by the Supreme Court in discussing the question on the former appeal by plaintiffs (*Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14]) : 'Where money has been paid in consideration of an executory contract which is illegal, the party who has paid it may repudiate the agreement at any time before it is executed and reclaim the money.' "

The rule announced by both the supreme court and the district court of appeal was reaffirmed by the former in the very recent case of *White* v. *Jacobs*, *supra*. In that case the trial court had given judgment on the pleadings in an action wherein it was sought to recover a deposit made on a contract for the sale of lots by reference to unrecorded maps. Affirming this judgment, the court held: "This being so, and the sole defense of the said defendants to the third count or cause of action being the defense that the plaintiff knew at the time of entering into the agreement therein set forth that the map therein referred to was an unrecorded map, it follows that, if the defendants' averments in that regard constituted no defense, the trial court acted correctly in granting the motion of the plaintiff for a judgment against said defendants on the pleadings. In the case of *Smith* v. *Bach*, 183 Cal. 259 [191 Pac. 14], it was held by this court that the sale or offer for sale of lots of land by reference to an unrecorded map or plat was expressly prohibited by the terms of the aforesaid statute and that contracts for such sales based thereon were illegal and void. In a later decision of the same case by the District Court of Appeal (*Smith* v. *Bach*, 54 Cal. App. 236 [201 Pac. 611]), it was held that the fact that the plaintiff, who was seeking to recover the money paid on account of such illegal and void transaction, knew that the map referred to therein was unrecorded, constituted no defense to her right of recovery. We have no doubt as to the correctness of the foregoing decision by the appellate tribunal and expressly approve the same, and, in so doing, hold not only that the trial court in the instant case acted correctly in granting the plaintiff's motion for a judgment on the pleadings and in entering such judgment, but that this appeal is frivolous and without merit and was taken for purposes of delay."

In *Krause* v. *Marine Trust & Savings Bank, supra,* we find this language: "The purchase price of the lot, which was paid pursuant to this void executory contract, was therefore *without consideration,* and hence was a proper claim for repayment *in this action for rescission.*" The statement just quoted would seem to conclusively answer respondents' contention that appellant may not be heard to claim rescission of a void and hence legally nonexistent contract.

Respondents urge that "the parties having tried the case in the court below upon the theory that there had been a valid and existing contract between the parties, the appellants cannot on appeal be heard to advance the theory that no such contract existed." We have examined the authorities upon which they rely for support of this contention but find none of them in point in view of the state of the record in the case. The complaint alleged payment of the $2,500 deposit on the contract in question, which contract is set out *in haec verba* as an exhibit and by reference made a part of the pleading. It further alleges a mutual rescission, a return of a portion of the deposit and the refusal to return the balance. It was not necessary to allege that the contract was void. Its invalidity appeared upon its face, since it specifically stated that the map referred to therein had not been recorded. In *Young* v. *Laguna Land etc. Co., supra,* a similar contention was thus dealt with: "It is argued by appellants on this appeal that the invalidity of the contract by reason of the failure to record the map was not raised in the court below but that it was raised for the first time by respondent on this appeal. For this reason, it is argued, this court cannot consider the point. The question was raised by the plaintiffs in the amendment to their complaint, wherein they expressly alleged that the contract for the sale of this lot was made in reference to the map which was exhibited to the plaintiff Florence R. Young and which had been prepared for recordation at the date of said agreement but which was never recorded by said defendant at all. Thus, *on the face of plaintiff's complaint,* the contract was void and unenforceable." (Italics ours.)

Appellants urge as another and distinct ground for their contention that the contract was void and hence

that there was a failure of consideration, the point that it was lacking in mutuality. This point, we think, is well taken. A brief analysis of the document in question demonstrates that it bound respondents to nothing. Under the last clause there is a reservation of the right in the owner of the property "to return the above money" at any time before a contract of sale is signed and approved by the owner, and the "acceptance" signed by the Evans-Ferguson Corporation is subject to this condition. As said in *Stanton* v. *Singleton,* 126 Cal. 657 [47 L. R. A. 334, 59 Pac. 146] : "Of course, there is on the face of the instrument no mutuality of contract, for appellant [in that case] does not promise in it to do anything." It is the general rule that "where a contract imposes no definite obligation on one party to perform, it lacks mutuality of obligation, or of consideration, which means the same thing. If it is not binding on one party it does not bind, the other." (6 Cal. Jur. 211; *North Confidence Min. Co.* v. *Morrice,* 56 Cal. App. 145 [204 Pac. 851] ; *McCowen* v. *Pew,* 18 Cal. App. 302 [123 Pac. 191] ; *Brown* v. *San Francisco Savings Union,* 134 Cal. 448 [66 Pac. 592] ; *Levy* v. *Lyon,* 153 Cal. 213 [94 Pac. 881].) As said in *Rourke* v. *McLaughlin,* 38 Cal. 196, if a contract must be construed to give one of the parties the election to perform, it is devoid of mutuality, "for it would be leaving the existence of the contract to the will of one of the parties, which would be to say that there was no contract at all."

The general rule is stated in 13 Corpus Juris, at page 337, supported by reference to a number of decisions, that where one party reserves the right of cancellation mutuality is absent. (See, also, *Central Oil Co.* v. *Southern Refining Co.,* 154 Cal. 165 [97 Pac. 177].) A party to an agreement which thus purports to bind him alone has the right to withdraw from it and to demand and recover whatever he has paid thereunder. Thus, in *Hamlin* v. *Barnhart,* 26 Cal. App. 632 [147 Pac. 1188], the court said: "The right of respondent to withdraw from the agreement seems clear. There was no mutuality of consideration provided for. On the one hand it was proposed to bind respondent in absolute terms to perform on her part, while appellant's performance was made conditional. . . . In the event of his default, respondent had no remedy as

against his caprice. 'If a promise does not offer any enforcible legal right or forbearance it is not a consideration. This principle is sometimes expressed in the rule that promises, in order to be a valid consideration each for the other, must be mutual. . . . Where the parties assume to make a contract in which a promise is the consideration for a promise, and analysis shows that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise.' (1 Page on Contracts, secs. 302, 303, 304.) . . . Treated as a mere offer to exchange, the proposal was revocable by respondent at any time before acceptance by appellant." Nor is such lack of mutuality in an agreement for the sale of land remedied by a subsequent offer of performance by the party not bound. (*Zaring* v. *Lavatta,* 36 Idaho, 459 [211 Pac. 557].)

The case of *Weber* v. *Hulbert,* 225 Ill. App. 321, well illustrates these principles of law and in some respects presents a situation strikingly akin to that of the parties in this case so far as the question of mutuality or lack thereof is involved. The plaintiff in that case had signed a so-called "proposal" to purchase a lot from the defendant for a price and on terms specified therein. She paid a deposit and received a receipt from the owner's agent which concluded with the statement: "This receipt being issued subject to prior sale and to *acceptance* by Thomas H. Hulbert [owner]. The said sum to be returned in case of prior sale or non-acceptance." It was held that the agreement lacked mutuality and that the plaintiff was entitled to recover back the deposit. We quote from the opinion: "If the so-called proposal, as finally signed by the parties at the times shown, be considered as an attempt to incorporate into a contract all the terms of the purchase of the lot therein mentioned, it is void as a unilateral contract. When, on the morning of August 20, plaintiff gave Ham her check for $1,250, payable to defendant's order, she received a receipt signed by Ham, in which it was stated that the amount was received 'on account of her proposal for purchase' of the lot in question for the price of $12,500, and that the receipt was issued 'subject to prior sale and to acceptance' by defendant, and that said sum was to be returned to her in case of prior sale

or such nonacceptance. When these things were done it is clear that defendant was under no obligation to make a conveyance of the lot to plaintiff. When later in the same day Ham again called on plaintiff and presented the duplicate proposals to plaintiff for her signature, and she signed them, and Ham had delivered them to defendant, it is equally clear that defendant was under no obligation to make such conveyance. And, in our opinion, after defendant had signed said duplicate proposals and after one copy thereof had been received by plaintiff by mail, defendant was not bound thereby to make a conveyance of the lot to plaintiff even though she should have thereafter elected to make, and did make, further payments up to $6,250. In the third clause of the proposal is the statement: 'The said above described property, *if conveyed,* is to be conveyed by a good and sufficient warranty deed,' etc. Then follows the recital of various restrictions and conditions. Then under plaintiff's signature to the proposal proper there follow certain statements in the form of a receipt, under which appears defendant's signature. He therein acknowledges the receipt from plaintiff of $1,250, 'as deposit on the above proposal,' but he does not accept the proposal as made. All the agreement on his part is, that if all the subsequent payments agreed in said proposal to be made by plaintiff have been made promptly when due, said sum of $1,250, together with subsequent payments, is to be returned 'if for any fault, failure or neglect chargeable to me the said above recited property shall not be conveyed in accordance with the terms of the said proposal.' He does not promise to convey the lot to plaintiff even though the subsequent payments mentioned should be promptly made by her. The mere fact that he has the right, as stated, to return all moneys paid by her presupposes the fact that he has a right to refuse to convey the lot, if he should so desire. The contract, if it is a contract, is unilateral, lacking in mutuality and void."

■ We are of the opinion that because the original agreement was void in law, and in addition thereto was entirely lacking in mutuality, there was no "obligation" on the part of appellants which could be extinguished, and no consideration for an agreement to accept something less than appellants were entitled to, and that as a matter of law

no accord and satisfaction was had. In expressing these views we are not unmindful of the rule laid down in *Berger* v. *Lane*, 190 Cal. 443 [213 Pac. 45], "that the compromise of a disputed or doubtful claim is in itself a good consideration (for an accord) and that no investigation into the character or value of the claim will be gone into for the purpose of setting aside a compromise honestly made." We cannot agree, however, that there was a *bona fide* disputed or doubtful claim in this case. The absolute invalidity and illegality of an agreement to sell, or offering to sell, lots by reference to an unrecorded map had been so repeatedly pronounced by the decisions of our courts as to leave no room for doubt in the mind of anyone. The language of the contract itself shows that the parties recognized this fact. In *Berger* v. *Lane* it is further said: "But on the other hand it is equally true that to constitute a good consideration for a settlement by way of compromise there must have been an actual *bona fide* difference or dispute between the parties as to their legal rights." In *Lapp-Gifford Co.* v. *Muscoy Water Co., supra,* quoted with approval in *Berger* v. *Lane,* it is said: "While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be founded in good faith. Without an honest dispute, an agreement to take a lesser amount in payment for the liquidated claim is without consideration, and void. An arbitrary refusal to pay, based on the mere pretense of the debtor made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule."

In all of the cases which we have examined dealing with this subject it is to be noted that the legality and validity of the original agreement was unquestioned, the dispute settled by the accord being one as to the rights, duties and obligations of the parties thereunder. A dispute or contention as to the rights of parties under a valid legal contract, even though the contention of one of them be untenable or the result of a misconstruction of their agreement, may, under the rule laid down in such cases as *Berger* v. *Lane, supra,* be the proper subject of an accord. Where the original contract is void because contrary to express statutory law, an entirely different rule applies. In

*Sierra Power Co.* v. *Universal Electric etc. Co., supra,* at page 387 of 197 Cal. [241 Pac. 81], we find this pertinent statement: "Since an accord is an agreement it is subject to the same rules applicable to other agreements (1 Cal. Jur. 127). 'The discharge of claims by way of accord and satisfaction is dependent upon contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore there must be (1) a proper subject matter; (2) competent parties; (3) a consent or meeting of the minds of the parties, and (4) a consideration.' (1 R. C. L. 178, sec. 3.) The agreement of accord and satisfaction which the defendant here contends for could under the evidence arise only by implication. The statute expressly forbade the plaintiff to charge or receive compensation for electrical energy at any rate other than that specified in the contract duly filed. It therefore could not lawfully accept the amounts tendered by the defendant. In view of this situation counsel for the plaintiff very pertinently inquires, 'How can the law imply that plaintiff has done that which the statute expressly forbids?' We think the answer must be that a contract of accord thus arising cannot properly be brought into being with one of the essentials of a contract lacking, to-wit, *a lawful subject matter.*" (Italics ours.)

We are of opinion that the judgment should be reversed, and it is so ordered.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 31, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1929.

All the Justices concurred.