[Civ. No. 4535.  Third Appellate District.—February 13, 1932.]

T. E. BURNS, Respondent, v. THE GROSVENOR INGLIS
CORPORATION (a Corporation), Appellant.

Loris V. Cady and Margaret E. Faires for Appellant.

John J. Dillon for Respondent.

PARKER, J., *pro tem.*—The action was instituted to rescind certain contracts and to recover moneys paid on the purchase price.

The case presents one or two novel features, arising perhaps from the fact that almost the entire theory of the case suddenly changed between the time of the commencement of the trial and its conclusion. The suit in its com-

mencement was predicated upon the alleged fraud. The third amended complaint was in four counts: The first count alleging and detailing the fraud complained of; the second count set up a lack of mutuality and consequent failure of consideration; the third count was for money had and received and the last count was on an account stated.

Here we may stop to note appellant's contention that the trial court erred in overruling the demurrer to the complaint. There are no special points of pleading involved, a consideration of which would necessitate analysis of the contention. As conceded by appellant, recovery was had on the first and third causes of action; therefore the sufficiency of the two remaining counts would become a matter purely academic. Without further detailing each separate allegation in the counts remaining we are content to hold that the ruling of the court below was not erroneous. The recovery here was permissible under the common count, if sufficiently supported in fact. However, it does not become necessary to discuss the fact.

Plaintiff and defendant had entered into a number of contracts for the purchase and sale of certain real estate, embracing about twenty-four city lots. The record discloses that respondent Burns arrived in California in the early part of March of 1928. Soon after his arrival he contacted a salesman of appellant and the deal began. During the ensuing month Burns had contracted for all of the twenty-four lots and had paid to appellant a total of $8,190. The agent of appellant, with whom Burns had done the business, was a gentleman named Ferguson. Shortly after May 1, 1928, Ferguson disappeared. From that time on the rosy glow of the Burns prospects began to wane. Burns began making investigations of his own and as a result thereof became dissatisfied and convinced that he had been defrauded. Finally Burns sought out those in actual charge of the appellant's business and, after frequent visits and consultations with these people, it was agreed between Burns and appellant that the original twenty-four contracts be and the same were canceled, rescinded and set at naught.

Out of these negotiations arose four new contracts. The appellant agreed to sell and Burns agreed to buy four lots sufficiently described for our present purposes as lots 51

and 53, tract 10038, north half of lot 351 and south half of lot 351 in tract 9940.

The appellant agreed to credit Burns in the purchase of these lots, with the total of his equities in the twenty-four contracts. There is a conflict here as to the extent of the credit, Burns contending that the credit was to be for the actual amounts paid by him, and the appellant insisting that the credit was to be computed on the net amount after deducting commissions. The difference would be in the neighborhood of $5,000. Thereafter Burns learned that credit had not been given as he contended was the agreement. He rescinded or attempted to rescind these later contracts and upon refusal to refund the moneys thereafter paid, the action was commenced.

The trial court found upon sufficient evidence the fraud alleged and that all of the contracts entered into prior to the agreement of September 5, 1928, were induced by and through such fraud. Then follows this particular finding:

"That on or about the 5th day of September, the defendant corporation entered into a new agreement with the plaintiff wherein and whereby for and in consideration of the cancellation of the contracts theretofore executed between plaintiff and defendant the plaintiff agreed to purchase under said new contract, Lots 51 and 53 in Tract 10038 and the N½ of 351 and S½ of 351 in Tract 9940 and agreed that the down payment on said four lots would be the equities in all the lots heretofore purchased by plaintiff from the defendant corporation."

That is the only finding of fact on the subject of this later agreement. Obviously no fraud is found nor is the sufficiency of the agreement in anywise modified.

We now approach the crux of the case. Of the original twenty-four contracts there were twenty which covered lots in tract 9940. Fifteen of these contracts, each contract involving a separate lot, were entered into prior to April 18, 1928. Prior to April 18, 1928, the map of tract 9940 had not been and was not recorded. The court finds this fact of nonrecordation and also makes a finding as follows:

"That all of the contracts covering the property purchased from the defendant corporation by the plaintiff, described the property by lot number and tract number only, and that all of the said contracts for the said prop-

erty had set out and printed on the back thereof, a map of the tract in which the lot referred to in said contract was situated and located, and that all of said property was sold by reference to the map description only."

The conclusions of law drawn by the trial court from the foregoing findings are as follows:

"1. That all of the contracts executed by the plaintiff and defendant on Sept. 5, 1928, were void by reason of the fact that part of the consideration for said contracts was illegal and void.

"2. That all the preliminary agreements and or contracts between plaintiff and defendant corporation for lots in Tract 9940 (here naming 15 lots) executed prior to April 18, 1928, were illegal and void by reason of the fact that the same were made with reference to an unrecorded map.

"3. That the other contracts (being those other than of Sept. 5, 1928) made by plaintiff and defendants on the remaining lots are invalid and void and of no force or effect by reason of the fraud in the procurement of the same." In addition were conclusions as to laches, rescission and accord and satisfaction.

From these findings and the conclusions of law therefrom the trial court awarded plaintiff judgment for the recovery of all sums paid by him to the corporation. We think that all question of fraud, under the circumstances shown, is out of the case. ■ It is not a proper conclusion to hold that because a contract has been induced by and through fraudulent misrepresentation that the contract is *per se* illegal and void. Such a contract may be valid and enforceable until the alleged fraud is shown; in cases of this character it is certain that fraud is not presumed.

■ As a general principle of law a void and illegal contract may not be ratified or affirmed. ■ And as a principle equally recognized one who has been induced into an agreement, through fraudulent misrepresentations, may stand upon the contract and receive damages or he may rescind it and likewise he can ignore the fraud and stand solely upon the contract. In neither case is the contract regarded as a nullity inasmuch as equity, yclept the handmaid of justice, demands that a defrauded party rescind promptly or be without relief. We, therefore, construe the conclusion as being to the effect only that the

contracts were induced through fraudulent misrepresentations and that plaintiff had the right to rescind.

We then find this situation: Plaintiff had contracted total payments of $72,028.50. Of this amount approximately $35,375 represented amounts in fourteen lots contracted with reference to the map of tract 9940, then unrecorded. The balance was untainted, save through the claimed fraud. We may, therefore, state that for practical purposes the funds payable were about evenly divided between the sales effected through the nonrecordation of the map and those not so effected. There is no dispute as to the facts supporting the finding that no map of tract 9940 was recorded until after sale of fourteen lots. ■■■ Appellant, however, attacks the finding that the property was sold by reference to the map description only. In this connection appellant, while admitting that the contracts contained a provision that a map of the tract was printed on the back to show clearly the exact location of the property purchased, and that a map was so printed on the back of the contract, urges that the sale was independent of the map. The appellant's argument is to the effect that plaintiff personally visited and inspected each lot and that the map in no manner was referred to or employed in the sale. It is true that plaintiff was shown about the property, but only in a general way; he had little familiarity with any part of the city of Los Angeles and none at all with the tract involved here. Merely general statements were made to him and there was nothing by which the lots could be identified other than the map.

The record contains all of the evidence on the subject and while it may be possible to draw, from detached positions some inference in support of appellant's contention, we think that on a complete review of the evidence, the finding is amply supported.

Incidentally it might be noted that the purpose of the law is not simply to have a mere map on record. The statute contemplates other things equally, if not more important. ■■■ It requires the filing of a map or diagram showing not only the metes and bounds but showing also the title to be clear and the property free from lien of taxes; likewise must the map show the dedication of the streets and

highways. The statute was enacted in 1907 and has been before the courts for construction on many occasions. Ignorance of its scope and intent may not be presumed. Indeed, it may be safe to say that every realtor dealing in subdivisions is familiar with the law. It is obvious that a mere general view of premises in no sense suffices to supplant either the actual or legal necessity of the recordation of a map used in a sale. Too many laws have been whittled down to unusable dimensions by loose construction in an idle attempt to attain something which might be termed an approximate or expedient justice in each case. Here, as noted, the facts will support the finding and we are not inclined, nor are permitted, to reshape the case at the sacrifice of the statute's manifest design. It is conceded that a sale in violation of the statute providing for recordation of maps is void. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]; *White* v. *Jacobs,* 204 Cal. 334 [267 Pac. 1087]; *Shortell* v. *Evans-Ferguson Co.,* 98 Cal. App. 650 [277 Pac. 519].)

We now approach the situation as it existed on September 5, 1928. The map of tract 9940 had been recorded some months prior thereto. On September 5th, Burns came to the company holding twenty-four separate and distinct contracts upon which he had paid a total of $8,190, of which amount $262.03 represented interest. Fifteen of these contracts were void. Something more than half of the total moneys paid were under these contracts. At the said time Burns held other contracts covering nine lots and involving a sum equal to that in the other fifteen. These latter contracts were valid enforceable contracts upon which Burns was obligated to pay further sums, which obligation might be removed or avoided by a showing of fraud. At that time, beyond question, Burns was entitled to receive back in full any and all payments made under the void contracts. This he attempted to do. The record indicates that Burns' first request was for the return of his money. It is shown that the corporation, previously informed of Burns' dissatisfaction, had already prepared the new agreements for the four lots. In passing, it may be noted, these four lots were the same lots which had first been contracted to Burns.

It is apparent that through the agreement of September 5th, Burns lost or would lose his right to demand the moneys theretofore paid, totaling some $4,000.

Turn the facts around as we may, we come back to that one undenied fact that for and in consideration of the agreement of the corporation to convey, Burns sold and compromised his money claim and his right to have declared void the fifteen void contracts. In each of the agreements of September 5th is this language: "And the subscriber has paid this day as a part of such purchase price (here inserting amount) cash; a portion of equity transferred from following lots," being the lots named in the other twenty contracts.

The result of the four contracts of September 5th was to release all of the *equities* in the other lots. Instead of allowing Burns a credit for the sum of $8,190, as paid in, the total credit allowed was $3,671.49, being substantially less than one-half. The balance was retained under the claim that said amount had been expended by the corporation in the payment of commissions to salesmen who had brought in the account.

The entire transaction is so clearly a compromise and attempted accord as to permit of no conjecture. And it is equally as plain that the chief consideration was the abandonment of all equities by Burns in the previous contracts and the sums paid thereunder.

Section 1608 of the Civil Code provides: "If any part of a single consideration for one or more objects or several considerations for a single object is unlawful, the entire contract is void."

The entire agreement of September 5th and the contracts arising out of the same are inseparably tied into the original void contracts.

The rule that such void contracts cannot afford a basis of accord and satisfaction is well stated in *Shortell* v. *Evans Ferguson Corp.*, 98 Cal. App. 650 [277 Pac. 519], and a reference to the case and the authorities therein cited will suffice without quotation therefrom.

Appellant argues that the law sanctions and encourages compromise and adjustment and that the policy of the courts is to approve settlements between the parties rather than promote litigation, all of which is true in the abstract.

In no case, however, does the law tolerate its own undoing. If a seller wilfully violates the law in the procuring of a void contract, he will not be permitted to retain and enjoy the benefits thereof through a compromise effected for the obvious purpose of absolving himself and indirectly enforcing the terms of the former void agreement.

Appellant next urges that there was an honest dispute between the parties. The argument is that if the lots were sold without reference to the map, the sale was not invalid; that there was a contention by appellant that the sale was exclusive of any reference to the map and that this claim was supported in fact. The facts, it is claimed, make the dispute real and a compromise made under such condition will be held effectual. The contention is of no merit. The seller knew the map was not recorded. The trial court found upon sufficient evidence that the sale was with reference to the unrecorded map. The contracts of sale used the map as sole means of description and of title. There is not a word of evidence that the officials of the corporation acting in the compromise knew anything about the sales, whether Burns viewed the premises or not and not a bit of testimony indicating that the question ever arose at any stage of the negotiations of September. Appellant relies on the record as disclosed on the trial as to the honesty of the dispute and, therefore, we may accept the finding of the trial court in that respect. This finding is that the sale was by reference to the map only. We are not holding that the honesty of a dispute is to be tested by the right or wrong of either disputant in every case. But that where that question is presented as of the record itself, we do accept the trial court's determination thereon.

In *Berger* v. *Lane*, 190 Cal. 443 [213 Pac. 45, 47], this language is quoted with approval: "While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be founded in good faith. Without an honest dispute, an agreement to take a lesser sum in payment for the liquidated claim is without consideration and void. An arbitrary refusal to pay, based on the mere pretense of the debtor made for the obvious purpose of exacting terms which are inequitable and op-

pressive, is not such a dispute as will satisfy the require-ments of the rule.''

Judgment affirmed.

Plummer, J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 14, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1932.